[No. 16326.  *En Banc.*  April 14, 1921.]

# W. F. HARDIN, *Appellant*, v. KLICKITAT COUNTY *et al.*, *Respondents.*[1]

COUNTIES (85)—LIABILITIES—PAYMENT OF BONDS. Highway bonds constitute a county liability under the Donohue Road Law, which provides, in Rem. Code, § 5739 (as amended in Laws 1917, p. 238), that one-half the cost of highway improvement shall be assessed to the county, one-fourth to the road district, and one-fourth to the property within the improvement district; and further provides, in Id., § 5763 (as amended by Laws 1917, p. 252, § 19) that when payment for the improvement is to be made in installments, the county commissioners may "issue bonds of the county payable from the said improvement fund", and that interest thereon or the bonds may be paid out of the general road and bridge fund or the current expense fund of the county, when there is not sufficient money in the improvement fund to make payment of any installment due (overruled on rehearing).

### ON REHEARING.

SAME (85). Highway bonds issued under the Donohue Road Law, Rem. Code, §§ 5739, 5763, as amended by Laws 1917, p. 252, § 19, are not a general county obligation, in view of the proviso to the effect that the general county funds from which payments were authorized, when there was an insufficiency of money in the improvement fund, shall be reimbursed from the improvement fund from time to time as moneys are paid therein (PARKER, C. J., FULLERTON, and MAIN, JJ., dissenting).

Appeal from a judgment of the superior court for Klickitat county, Darch, J., entered May 14, 1920, upon an order sustaining a demurrer to the complaint and dismissing an action to restrain county commissioners from proceeding with a highway improvement. Reversed.

*Brooks & Brooks,* for appellant.

*C. W. Ramsey* and *E. C. Ward,* for respondents.

*Teal, Minor & Winfree, Thomas Smith,* and *Coleman & Gable,* amici curiae.

[1]Reported in 197 Pac. 644; 203 Pac. 383.

MAIN, J.—This action was brought by a taxpayer of Klickitat county, on behalf of himself and others similarly situated, to restrain the county commissioners of that county from proceeding with the improvement of a public highway under Rem. Code, §§ 5730-5782, commonly known as the Donohue Road Law, and the amendment thereto found in Laws of 1917, p. 238, ch. 72. The county commissioners had granted the petition for the improvement and by resolution had authorized the organization of an improvement district. Under the direction of the commissioners the road to be improved was surveyed and an estimate of the cost made in accordance with the statute. The cost of the improvement was to be made in annual installments and bonds were to be issued therefor. The facts are set out in the complaint to which a demurrer was interposed and sustained. The plaintiff, not pleading further, appeals from the judgment dismissing the action. The controlling question is whether, under the act under which the improvement is being made, the bonds to be issued for that portion of the assessment which is to be paid by the road district and the property owners within the improved district constitutes an indebtedness of the county.

The statute (Rem. Code, § 5739) as amended in Laws of 1917, p. 238, ch. 72, provides that for a highway improvement thereunder, one-half of the whole estimated cost thereof shall be assessed to the county, one-fourth to the road district in which improvement is located, and one-fourth against the property within the proposed improved district. The question here is whether the bonds issued for that portion of the cost which is to be paid by the district and the property owners are a liability of the county. The act provides for the creation of a separate fund into which the

moneys derived from the sources to pay for the improvement shall be first paid. In addition to this, it is provided that the expense to be borne by the county, township or road district shall be levied and collected as other taxes.

Section 5763 of Remington's Code, as amended by § 19, chapter 72, Laws of 1917, p. 252, provides that, when payment for the improvement is to be made in installments, the commissioners may "issue bonds of the county, payable from the said road improvement fund"; and there is a proviso in the section that, should there not be sufficient money in the improvement fund to make payment of any installment of "interest, or the bonds when due, said interest or bonds may be paid out of the general road and bridge fund or the current expense fund of the county."

Under the language of the proviso last quoted, if there be not sufficient money in the improvement fund to pay any installment of interest or principal of the bonds when the same may be due, it becomes the duty of the county commissioners to direct that such interest or principal be paid out of the general road or bridge fund or the current expense fund of the county. It would seem that this language plainly imposes a county liability and that the holders of the bonds are not limited to a fund which may be raised from the assessment to the road district and upon the property benefited. There is no provision in the law that the bonds shall not be paid out of any other fund than that assessed to the district or the property benefited. In *Kimball v. Board of Com'rs,* 21 Fed. 145, the court had before it for construction a statute of the state of Indiana authorizing an improvement of highways by the county commissioners and providing for the issuing of bonds therefor. In the statute it was provided

that the assessment for the purpose of paying the bonds should not be applied to any other purpose than that for which it had been assessed. The question was whether the bonds were evidence of the general liability of the county and it was there held:

" . . . it cannot be said to be true in fact that the bonds are payable solely from the proceeds of the special assessments, unless an inference to that effect must be drawn from the requirement that the assessment be made, and that the money derived therefrom shall be applied to no other purpose. But this inference, as it seems to me, in the light of the whole statute, is neither necessary nor admissible. While the special fund is provided, which may be used for no other purpose, it is not declared that no other fund may not be used for the same purpose. The suggestion made, that if other funds be used to pay such bonds the special fund when collected could not be used at all, presents no difficulty. It is sufficiently manifest that in such case the special fund should be used to replace the sum first taken from the general funds. The letter of a single clause cannot be permitted to kill the spirit of an entire statute. Indeed, this clause, as I suppose, adds nothing to the force of the statute, as without it the fund specially provided for the payment of the bonds must have been held to be no less sacredly devoted to that purpose. The express declaration against any other use can at most be regarded only as emphasizing what would have been the rule without such expression."

In *United States v. Fort Scott*, 99 U. S. 152, the court had before it a statute of the state of Kansas which authorized the cities of the second class to improve streets and provide for the payment thereof by assessments to be made upon the lots or tracts of ground extending along the street to be improved. The statute under which the bonds there in question were issued provided that for the payment of such bonds

assessments should be made upon the property taxable therewith.

It was neither, as stated by the court, "expressly nor by necessary implication provided that the holder of the bonds may not be paid in some other mode, or that the city will not, under the authority derived from other sections of the statute, comply with *its* promise to pay the bonds, with interest, at maturity." It was held that the bonds were a liability of the city. There was no reservation as stated by the court "as against the purchasers of the bonds, of a right, under any circumstances, to withhold payment at maturity, or to postpone payment until the city should obtain, by special assessments upon the improved property, the means with which to make payment, or to withhold payment altogether, if the special assessments should prove inadequate for payment." Other cases to the same effect are *Vickrey v. Sioux City,* 115 Fed. 437; *City of Superior v. Marble Sav. Bank,* 148 Fed. 7.

It is not necessary in the present case to go so far as the holding in any of the cases above cited, as the statute here for consideration expressly provides that, if the interest or principal of the bonds be not paid when due, then it becomes the duty of the commissioners to cause the same to be paid out of the general road or bridge fund, or the current expense fund of the county. The case of *Quill v. City of Indianapolis,* 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681, is distinguishable. There it was held that, under that particular statute being construed, the bond holders were confined exclusively to the special fund provided for and to the collection of assessments by enforcing the lien upon the lots or parcels of ground assessed with the cost of the improvement, and that the city was in no way liable for the payment of the bonds except out of

the special fund to be accumulated from the assessments made against the property benefited.

The judgment will be reversed and the cause remanded with directions to the superior court to overrule the demurrer.

Parker, C. J., Mount, Tolman, Bridges, Mackintosh, Fullerton, and Mitchell, JJ., concur.

## On Rehearing.

*[En Banc.  January 7, 1922.]*

Holcomb, J.—This case was heard and decided heretofore *En Banc,* and a rehearing was granted.  A number of other counties are similarly interested and an able brief has been furnished by counsel appearing as *amici curiae,* but presenting their side.  We are also favored with very able briefs by counsel appearing as *amici curiae,* but presenting the side of purchasers of Donohue Road Act county bonds.

Under the former decision it was held that the bonds to be issued under the Donohue Road Law, as amended in 1917 (Rem. Code, § 5739; Laws of 1917, Ch. 72, p. 238, and Rem. Code, § 5763; Laws of 1917, Ch. 72, § 19, p. 252), constitute a primary liability and obligation of the county constructing and improving the roads under that law.  In the former decision we based our conclusions upon certain language in § 5763, *supra,* as follows:

*"Provided,* That should there not be sufficient money in said improvement fund to make payment of any installment of interest, or the bonds when due, said interest or bonds may be paid out of the general road and bridge fund or the current expense fund of the county, as may be directed by the board of county commissioners, . . ."

We gave no effect to the remainder of that proviso, reading as follows:

"and such fund shall be reimbursed from said improvement fund from time to time as monies are paid therein."

We also stated that there was no provision in the law that the bonds shall not be paid out of any other fund than that assessed to the district or to the property benefited. Accordingly, we based our decision principally upon decisions of the United States courts (*Kimball v. Board of Commissioners*, 21 Fed. 145; *United States v. Fort Scott*, 99 U. S. 152; *Vickrey v. Sioux City*, 115 Fed. 437; *City of Superior v. Marble Savings Bank*, 148 Fed. 7), which are all to the effect that when there is no such provision in the law providing for public improvements, namely, that the bonds shall not be paid out of any other fund than that assessed to the district or the property benefited, such bonds of necessity constitute general obligations of the city or municipality issuing them.

Upon reconsidering the matter more maturely, and with more comprehensive briefs upon the question, we are of the opinion that the proviso quoted, to the effect that, "should there not be sufficient money in said improvement fund to make payment of any installment of interest, or the bonds when due, said interest or bonds may be paid out of the general road and bridge fund or the current expense fund of the county, as may be directed by the board of county commissioners, and such fund shall be reimbursed from the said improvement fund from time to time as monies are paid therein," undoubtedly means, when taken in connection with the context of the other proviso, that the bonds shall be payable from the road improvement fund, but that when temporarily there is not sufficient money in the improvement fund to make payment of installments of interest of the bonds when due, the

county commissioners may optionally advance or temporarily loan funds sufficient to meet the installments of interest or bonds when due, and mandatorily requires that the fund from which the installments are paid shall be reimbursed from the improvement fund from time to time as monies are paid therein.

Evidently it was the intention of the legislature, when enacting that the board of county commissioners might, if deemed necessary and proper, issue bonds of the county "payable from said road improvement fund", to make such bonds only limited and special obligations of the county, and not general or primary obligations; but general and primary obligations only of the specific road improvement fund under which they were to be issued. The duty of the county is to collect the funds and see that they go into the proper special fund, and disburse them properly as due. These things the county and its officers can be mandatorily compelled to do.

We held in *State ex rel. McMillan v. Hills,* 109 Wash. 175, 186 Pac. 295, in construing this same Donohue Road Law and attempting to give it a workable effect, that the words "property assessed for benefits" means not only the property within the special improvement district of two miles on each side of the center of the road to be improved, but also means the road districts or townships, and the county. In that case we said:

"In the same act it is clear that the county was legislatively declared to be assessable for the benefits, for by § 5739, subd. 1, Rem. & Bal. Code, it was provided that 'The benefits assessed to the county for such improvement shall be one-half of the whole estimated cost thereof'. In other words, as to the political subdivisions affected by the proposed improvement, the legislature, in its sovereign taxing capacity, fixed and apportioned the benefits and the resultant assessments to

them. It is not and cannot be doubted that the legislature had such power.''

It is to be noted that, under the Donohue Road Act prior to 1917, there was a provision for the alternative method of procuring funds on behalf of the county alone and constructing highways by calling an election for the voting of bonds and paying for the improvement out of the general fund, which was amended by the act of 1917, providing only for the payment of the cost of the improvement on the assessment for benefits plan, issuing bonds payable from the road improvement fund.

It seems plain that, when this substitution was made, together with the other comprehensive changes in 1917, the intention of the legislature was plainly manifested, and that it was the legislative plan to compel the owners of property within the four-mile zone of the highway, and the road district, or township, and the property of the county, in the several proportional parts specified by statute, to bear the cost. The property benefited must pay one-fourth; the property in the road district or township must pay one-fourth, and the property in the county must pay one-half of the estimated cost. Section 5, Laws of 1917, p. 242.

Section 17, Laws of 1917, p. 251, as amended by ch. 95, p. 230, Laws of 1919, both being amendments to § 35 of the original Donohue Road Act, provides that, when the improvement is made under the provisions of this act, the board of county commissioners shall, by resolution, direct the county treasurer to open an account to be known as the ''. . . Road Improvement Fund.'' The section further provides that the commissioners shall divide the total estimated cost and apportion the same according to the findings of the appraisers, and that these payments shall be collected as other taxes.

Section 18, Laws of 1917, p. 252, is as follows:

"That all monies collected by levy and assessment for improvements made under the provisions of this act shall be paid into such '. . . road improvement fund' and all payments made for costs of said improvements shall be paid by warrants drawn by the county auditor on said improvement fund upon presentation of proper vouchers, and such warrants shall bear interest at a rate not exceeding six per cent per annum."

Section 21, Laws of 1917, p. 253, amended the original act so as to provide "that no assessments for road construction or improvements, under the terms of this act, for which any county may be held liable, shall ever exceed four mills in any one year."

There were also provisions in the original act providing for a sinking fund to redeem bonds issued for the construction of such roads, but they were repealed by Laws of 1917, Ch. 72, § 13, p. 248. In fact, the entire act, as it now stands, as we view it, contemplates that, as was ineffectually provided in the original act (Laws of 1893, § 5, p. 302; Bal. Code, § 6745), "The costs and expenses of the improvements made under this act shall be apportioned as nearly as may be to the corporations, companies, persons and property benefited thereby."

The theory of special assessments for local improvements is that there are special benefits derived by those affected by the local improvement in proportion to the special assessments.

We have constantly held, in common with most of the other states, that the legislature, being competent to provide for local improvements entirely by special assessments, municipalities were not liable generally where they provided for local improvements within their limits and assessed the benefits to the property affected, and provided for the payment of the costs and

expenses thereof entirely by special assessments; and that warrants or bonds payable out of the special fund, or raised by special assessments for local improvements, are not a part of the municipal indebtedness limited by the constitution. *Thomas & Co. v. Olympia,* 12 Wash. 465, 41 Pac. 191; *German-American Sav. Bank v. Spokane,* 17 Wash. 315, 49 Pac. 542, 38 L. R. A. 259; *Wilson v. Aberdeen,* 19 Wash. 89, 52 Pac. 524; *Northwestern Lumber Co. v. Aberdeen,* 22 Wash. 404, 60 Pac. 1115; *Potter v. Whatcom,* 25 Wash. 207, 65 Pac. 197; *State ex rel. American Freehold-Land Mortgage Co. v. Tanner,* 45 Wash. 348, 88 Pac. 321; *Griffin v. Tacoma,* 49 Wash. 524, 95 Pac. 1107; *Scott v. Tacoma,* 81 Wash. 178, 142 Pac. 467; *Schooley v. Chehalis,* 84 Wash. 667, 147 Pac. 410; *Uhler v. Olympia,* 87 Wash. 1, 151 Pac. 117, 152 Pac. 998.

The argument of learned counsel who favored us with a brief *amici curiae,* attempting to sustain the position that the bonds are direct and primary obligations of the county under this legislation, in a measure defeats itself, for the reason that to adopt their views would result in the situation that a large number, if not most, of the counties of this state which have proceeded under the Donohue Road Act as it now stands, and have issued bonds therefor, would now be far in excess of limitation of indebtedness provided by the constitution for such municipalities to incur without a vote of the people, and in many instances have far exceeded their limit of indebtedness under the constitution after a vote of the people upon the proposed indebtedness. Hence many of the bond issues would be void because in excess of the constitutional debt limit of the counties.

We held in *Twichell v. Seattle,* 106 Wash. 32, 179 Pac. 127, where street railway bonds were made payable out of a special fund and were made a first charge

against the gross income of the system, that the bonds, being payable from the special fund, were not primary obligations of the city.

We consider that the cases from the Federal courts relied upon by us in our former opinion are based mostly upon statutes not restricting the payment of the bonds to special assessment funds directly, as is the case under our statute. Had the statute in our case not contained the provisions which we have adverted to herein, these cases would apply, although the Federal courts are more antagonistic to the idea of bonds being anything other than general obligations of the municipality, when issued by municipalities, than are the state courts generally. In going so far to protect the rights of security holders, some of them overlooked the principle that securities may be issued of only special and limited character, and that purchasers of all kinds of securities must look to the law under which they were issued to test their validity, and when the security is of a limited character only, that may effect the marketability and intrinsic value, but not the validity. The supreme court of Indiana, in *Quill v. Indianapolis,* 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681, very early decided this proposition, saying:

"It is enough to say the remedy of the holders of the bonds or securities is confined exclusively to the special fund provided for, and to the collection of the assessments by enforcing the lien upon the lots or parcels of ground assessed with the cost of the improvement. The city is in no way liable for the payment of the bonds, except out of the special fund to be accumulated from assessments made against the property benefited. According to the scheme promulgated in the statute, in case the assessments are paid without delinquency, it is impossible for a single bond or certificate to mature in advance of the accumulation of a special fund devoted exclusively to its payment. If the assessments become delinquent, the remedy of the

holders of the bonds or certificates is confined to the property. There is no liability against the city. The special fund provided for and the property are the sources from which the holders of the bonds and certificates must receive their pay, the city authorities acting merely as an agency for making and collecting the assessments, and as the custodian of the fund when the assessments are collected. In this they do not act as the agents of the city, but as special agents to accomplish a public end.''

And to the same effect, in construing road legislation somewhat similar to ours, providing for the raising of money to pay for the construction of such roads by the issuance of bonds of the county, the proceeds of which should be placed in a separate and specific fund to pay for the construction of the particular road or roads for which they were issued, which law also planned to assess all costs and expenses of the construction of the road or roads to the property affected by the improvement within a certain zone in entirety, the supreme court of Indiana first held in *Smith v. Board of Commissioners of Hamilton County,* (Ind.) 89 N. E. 867, that the act was unconstitutional, but later in 173 Ind. 364, 90 N. E. 881, overruled that decision, and, construing the act, held that it created no direct and general liability of the county. To the same effect was *Board of Commissioners of Munroe County v. Harrell,* 147 Ind. 500, 46 N. E. 124; *Borrowdale v. Socorro County,* 23 N. M. 1, 163 Pac. 721, L. R. A. 1917E 456, and the lengthy notations appended by the editor of L. R. A. to the last cited case.

We conclude, therefore, that the bonds issued under the Donohue Road Act, as it now exists, are not general county liabilities, but are special improvement bonds, payable out of special improvement funds.

Another question which was not noticed in the former opinion, but a decision on which is necessary, is

the question of whether, in determining the limit of county indebtedness within the meaning of the Donohue Road Law, the *actual value* or the *assessed valuation* should be considered.

The lower court held that Ch. 127, Laws of 1919, p. 298, which provided that assessments for road construction or improvements under the terms of Ch. 72, Laws of 1917, p. 238, the actual value of the taxable property in the county shall be used as the basis therefor, and not the assessed valuation, was repealed by Ch. 142, Laws of 1919, p. 392, relating to and defining taxing districts and providing that, whenever any such taxing district shall levy any tax, the assessed valuation of the property of such district shall be taken and considered as the taxable value upon which such levy shall be made.

Chapter 127, Laws of 1919, was passed March 11, 1919, and approved March 15, 1919, and had no emergency clause. Chapter 142 was passed March 13, or two days later than chapter 127, and approved March 17, 1919, or two days later than the approval of chapter 127, and contained an emergency clause. It is the general rule that the later of two conflicting general acts passed at the same session impliedly repeals the earlier act. We so held in *Whitfield v. Davies,* 78 Wash. 256, 138 Pac. 883, and further held that this was especially true where the latter contained an emergency clause. Chapter 127, therefore, never became the law, and Ch. 142 applies, which fixes the *assessed valuation* of the property as the basis for assessing property under the Donohue Road Law.

Our former opinion in this case is overruled, and the judgment of the superior court is affirmed.

Tolman, Bridges, Mackintosh, Mitchell, and Hovey, JJ., concur.

MAIN, J. (dissenting)—The statute refers to the bonds as "bonds of the county", and confers upon the commissioners the power, and makes it their duty when there is not sufficient money in the improvement fund to meet the interest or the principle, to pay same out of either the general road and bridge fund or out of the current expense fund of the county. The legislature could hardly have used more apt language for the purpose of making the bonds the obligation of the county. The provision that the county shall be reimbursed from the improvement fund, from time to time as monies are paid therein, can have no controlling importance. Whether the county shall be reimbursed in any case would depend upon whether there were monies in the improvement fund. If there were no monies in that fund, and it is easy to conceive a case where there might not be, the county would have no means of reimbursement. I adhere to the holding in the department opinion, and therefore dissent from the majority opinion *En Banc*.

PARKER, C. J., and FULLERTON, J., concur with MAIN, J.