[No. 20073. *En Banc.* February 2, 1927.]

A. B. COMFORT *et al., Appellants,* v. THE CITY OF TACOMA *et al., Respondents.*[1]

[1] MUNICIPAL CORPORATIONS (172, 180) — PUBLIC IMPROVEMENTS — CONTRACTS—PAYMENT FROM SPECIAL FUND. A contractor's agreement that he will accept, and not look beyond, the local assessment funds for payment, does not bargain away his right to reimbursement from the guaranty fund provided by the city under Rem. 1923 Sup., § 9351-1 *et seq.*, which is to be imported into his agreement.

[2] CONSTITUTIONAL LAW (72)—OBLIGATION OF CONTRACTS — CONTRACTS BETWEEN CITY AND INDIVIDUALS. Rem. 1923 Sup., § 9351-1, *et seq.*, establishing a guaranty fund on city work, does not impair the obligation of a contract entered into with the city thereafter.

[3] SAME (176)—PUBLIC IMPROVEMENTS—WANT OF POWER TO RENDER GENERAL FUND LIABLE. The city having the right to make im-

[1]Reported in 252 Pac. 929.

provements at the cost of the city, a tax payer cannot object to the establishment of a guaranty fund, under Rem. 1923 Sup., § 9351-1 *et seq.*, to be resorted to in case of failure of the local assessments to meet the obligations of the improvement district.

[4] SAME (438, 489) — MUNICIPAL INDEBTEDNESS — LIMITATION OF AMOUNT—PUBLIC IMPROVEMENTS — SPECIAL FUNDS. Rem. 1923 Sup., § 9351-3, requiring the city to pay into a guaranty fund sufficient to pay five per cent of the outstanding bonds, provided the local assessment funds prove insufficient, and to include the item in the annual budget and levy taxes therefor, creates only a contingent liability of the city to pay any part of the improvement bonds; and hence is not objectionable as creating a city indebtedness in excess of its constitutional limit, which had already been reached.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered May 6, 1926, in favor of the defendants, upon sustaining a demurrer to the complaint in an action to set aside a tax levy for the benefit of a local improvement guaranty fund. Affirmed.

*Homer T. Bone,* for appellants.

*E. K. Murray, Leo Teats, Bartlett Rummel, John H. Binns* and *D. D. Schneider,* for respondents.

*Preston, Thorgrimson & Turner, amici curiae.*

ASKREN, J.—The purpose of this suit is to test the validity and constitutionality of what is known as the local improvement guaranty fund provided for by statute. To achieve that result, this action was brought to set aside a tax levy made by the city of Tacoma in 1925, for the benefit of its local improvement guaranty fund. Upon the sustaining of a demurrer, plaintiffs have appealed.

A brief history of the statutes and ordinances and their purposes will be helpful to an understanding of the points raised.

Prior to 1917, many of the cities of the state of Washington had outstanding local improvement bonds which were unpaid, and practically valueless. The failure to

meet these bonds at maturity was due to many causes, including the lack of necessary restrictions to prevent pyramiding assessments, but the ultimate result thereof was to impair the credit of the cities of the state, and a consequent lowering of the value of the bonds. Countless numbers of these bonds were purchased by persons unskilled in such matters who failed to grasp the fact that the obligations which the bonds represented were not legally those of the city, but were restricted to the particular fund created by the assessment, although bearing upon their face words indicating to the casual observer a promise to pay by the municipality.

The legislature, in an endeavor to remedy this state of affairs, passed a statute (Laws of 1917, p. 576, ch. 138) [Rem. Comp. Stat., §§ 8986 to 8991], which provided in substance that any city of the first class could by ordinance create a fund for the guarantee of the payment of the local improvement bonds issued subsequent to the passage of the ordinance. Such cities were empowered to levy taxes to meet the requirements of the fund, and upon payment of any bond were to be subrogated to all the rights of the holder and the proceeds of the bond were to be a part of the fund. Warrants could be issued against such fund, but each year, at the time of making the budget and levy, the amount of such levy should be sufficient, with the other resources of the fund, to pay all warrants issued the preceding year. It provided that no holder or owner of any bond issued under the act and ordinance should have any claim against the city except from the assessments paid in and the guaranty fund. The act also contained a provision limiting the amount of local improvement work. The city council of Tacoma duly passed the necessary ordinance to come under the provisions of the act.

Thereafter the legislature, by chapter 141, Laws of' 1923, p. 454 [Rem. 1923 Sup., 9351-1 *et seq.*], amended the act to include all cities and towns and changed the limitations as to the amount of assessment. The city of Tacoma thereupon passed a new ordinance to come under the provisions of the act of 1923. In 1925, the guaranty act was amended, making it mandatory upon all cities and towns to establish a guaranty fund, but that act is not here in question because the levy here sought to be set aside was made under the act of 1923. [Laws of 1925, p. 551.]

[1] The first contention of appellant is that, since the contracts entered into for improvement work by the city of Tacoma with its contractors provided that the contractors would accept the bonds issued for the work, and not look beyond the local assessment funds for payment, that the contractor cannot receive any benefit from the guaranty fund, nor can he pass to a third person that right which he does not possess.

But we think that appellant goes too far in saying that the contractor has bargained away his right to look to the guaranty fund for reimbursement. True, the ordinance authorizing the particular work does not mention the guaranty fund, but the law of the state gives that right to all holders of bonds when the city by ordinance comes within its provisions. The effect, then, is to import into every contract the law of the state that the bonds issued therefor will be in the form provided by statute as to character and manner of payment. The bonds, when issued; provided that they would be paid from the local assessment fund and the guaranty fund and comply with the law.

[2] Nor does this law impair the obligation of a contract in contravention of § 10, Article I of the United States Constitution, since the law was in effect when the contracts were entered into.

[3] It is next urged that to tax appellants' property, which receives no special benefit, to guarantee a payment of bonds issued against other property, is contrary to law, because the whole theory of local assessments is one of special benefits to the property assessed. But this is not a special assessment. The city has the right to initiate local improvements and to pay the whole cost thereof out of general taxes. This tax is imposed on all alike, and is general in its application. A benefit accrues to every property owner because the additional guaranty of the bonds is reflected naturally in the increased price at which the bonds sell, thereby reducing the cost of all improvements. In time, every property owner will come within some improvement district, either for original improvements or for new improvements to take the place of those worn out or obsolete, and thus receive a benefit at that time by reason of the increased value of the bonds.

[4] The main and serious question raised in this case is whether bonds issued under the provisions of the guaranty law become a debt of the city, for, if they are, they increase the debt of the city of Tacoma beyond the one and one half per cent statutory limit without a vote of the people, and the statute authorizing their issuance becomes unconstitutional.

It is admitted at the outset by appellant that, under our decisions, these local improvement bonds, if issued without the guaranty, are not debts of the city. *Dean v. Walla Walla,* 48 Wash. 75, 92 Pac. 895; *Schooley v. Chehalis,* 84 Wash. 667, 147 Pac. 410; *Uhler v. Olympia,* 87 Wash. 1, 151 Pac. 117, 152 Pac. 998. It is said, however, that by placing them under the guaranty act, the city thereby becomes liable for their payment and a debt is created. The pertinent sections of the act are as follows:

"Section 1. Every city and town may immediately create a fund for the purpose of guaranteeing to the extent of such fund and in the manner hereinafter provided, the payments of its local improvement bonds issued subsequent to the effective date of this act: . . . [Rem. 1923 Sup., § 9351-1.]

"Sec. 2. Such fund shall be designated 'Local Improvement Guaranty Fund,' and shall at no time exceed a sum equal to five per cent of the outstanding bond obligations thereby guaranteed. [Rem. 1923 Sup., § 9351-2.]

"Sec. 3. After the creation of such guaranty fund the city or town shall levy, from time to time as other taxes are levied, such sums as may be needed to meet the financial requirements of the fund. Wherever there shall have been paid out of a guaranty fund any sum on account of principal or interest of a local improvement bond the city or town, as trustee for the fund, shall be subrogated to all the rights of the holder of the bond or interest coupon so paid, and the proceeds thereof· shall become a part of the fund. There shall also be paid into each guaranty fund the interest received from bank deposits of the fund, and from all moneys collected from local assessments the bonds against which are guarantied (guaranteed) by the fund. Warrants drawing interest at a rate not to exceed six per cent shall be issued against a guaranty fund to meet any liability accruing against it, but at the time of making its annual budget and tax levy the city or town shall provide for the levying of sum sufficient, with the other resources of the fund, to pay warrants so issued during the preceding fiscal year. *Provided, however,* that such warrants shall at no time exceed five per cent of the outstanding bond obligations guaranteed by said fund. [Rem. 1923 Sup., § 9351-3.]

"Sec. 5. Neither the holder nor the owner of any bond issued under the provisions of this act shall have any claim therefor against the city or town by which the same is issued, except for payment from the special assessments made for the improvement for which said bond was issued, and except as against the local im-

provement guaranty fund of such city or town. . . .''
[Rem. 1923 Sup., § 9351-5.]

It will be noted that under § 2, the amount of the
fund shall at no time exceed five per cent of the out-
standing bond obligations, and that under § 3, the city
shall levy, "as other taxes are levied," such sums as
are needed to meet the requirements of the fund, or,
in other words, that each year the city shall ascertain
the amount due and unpaid of such bonds and shall
levy a tax to pay them, but in no event to pay in any
one year more than five per cent of all outstanding
local improvement bonds. Specific provision is made
by § 5 of the act that no holder of any bond shall have
any claim whatsoever by reason of said bond against
the city, except the right to payment from the special
assessments collected and the guaranty fund. The
question then naturally arises;—has the city uncondi-
tionally bound itself to pay all these unpaid bonds to
the extent of at least five per cent of the total amount
outstanding? It is apparent, of course, that the city
has made no such promise. Its promise is to pay into
the guaranty fund sufficient to make it equal to five
per cent of the outstanding bonds, provided the local
assessment funds prove insufficient. To state the mat-
ter more simply, the city agrees that if the property-
holders, whose property has been assessed for the im-
provement, fail to pay in the regular assessments to
cover the bonds when due, then the city will make pay-
ment for them to a certain extent by accepting the
bonds from the holders and levying a tax for the money
to pay the same. This will readily be seen to be only
a contingent liability as far as the city is concerned,
and in no sense a debt proper.

If A is indebted to B and C promises that, if A does
not pay B, then he (C) will, no one would contend that

C had an outstanding debt. He has but a contingent liability that may or may not ripen into a debt. If A fails to pay, then, in that event, the contingent liability has ripened and the debt is absolute as to C. But until that time arrives C owes B nothing.

So in the present case, the city will have nothing to pay if the property-holders meet their obligations and pay their assessments. If they fail to do so, then the city will pay into the fund to the extent outlined in the statute.

The distinction between a debt and a contingent liability is nowhere more concisely stated than in *Walla Walla v. Walla Walla Water Co.*, 172 U. S. 1, 43 L. Ed. 341:

"There is a distinction between a debt and a contract for future indebtedness to be incurred, provided the contracting party perform the agreement out of which the debt may arise. There is also a distinction between the latter case and one where an absolute debt is created at once, as, by the issue of railway bonds or for the erection of a public improvement,—though such debt be payable in the future by installments. In the one case the indebtedness is not created until the consideration has been furnished; in the other the debt is created at once, the time of payment being only postponed."

Applying this rule to the present case it will be seen that the consideration will not be furnished until the bondholders deliver to the city the bonds against the property for which the special assessments were levied. Upon the delivery, then the city will pay the money into the guaranty fund.

In *Quill v. Indianapolis*, 124 Ind. 292, 23 N. E. 790, a debt is described as follows:

"It is, however, essential to the idea of a debt that an obligation should have arisen out of a contract, express or implied, which entitled the holder thereof

unconditionally to receive from the promisor a sum of money, which the latter is under legal or moral duty to pay without regard to any future contingency.''

In *Corey v. Ft. Dodge,* 133 Iowa 666, 111 N. W. 6, it was held that where the city had provided for a special assessment for improvements which contemplated a probable deficiency the amount thereof could not be considered as being an indebtedness within the meaning of the constitutional limitation.

In this connection should be borne in mind the fact that the guaranty provided for by the statute under § 1 of the act is only ''to the extent of such fund.'' The creation of a special fund to which the bondholders are restricted in itself negatives the idea of a general indebtedness upon the part of the city, and if the bondholders who are restricted to a single fund, to wit: the local assessment fund, can have no general claim against the city, it is hard to understand how the restriction to two funds, to wit: the local assessment and guaranty fund, can give any greater right than that provided by the additional fund itself.

Nor will the amount, if any, which accrues each year by reason of the property-owners' failure to pay, become a debt of the city, as that term is used in construing the constitutional limitation, for provision is made therefor by tax levy. It is a well-recognized legal principle that those obligations which, as soon as they become such, are provided for by taxation for the current year, are not to be included in the debts that are taken into consideration in determining the one and one-half per cent constitutional limit.

A very able argument is presented by counsel for the city and *amicus curiae* to the effect that the payment of the unpaid bonds through the guaranty fund amounts to no more than a loan to that fund under the authority

of *Griffin v. Tacoma,* 49 Wash. 524, 95 Pac. 1107; *Scott v. Tacoma,* 81 Wash. 178, 142 Pac. 467, and *Hardin v. Klickitat County,* 115 Wash. 389, 197 Pac. 644, 203 Pac. 383.

It is unnecessary to decide this point, for, even under the view most favorable to appellant, the obligation of the city, as we have already pointed out, is no more than a contingent liability.

It was argued that this was not in effect a contingent liability, because it was morally certain that there would be some unpaid bonds that the guaranty fund would have to pay, and that the local assessments would not produce, even under foreclosure, a sufficient amount to repay the guaranty fund. This is based upon the common knowledge which we all possess of the history of local improvement assessments, in many of the cities of the state. It may be true, if we were to look wholly to the past, that the court might be justified in saying that there will be an ultimate loss to that fund. But it must be remembered that, with the passage of the guaranty act, there were imposed new limitations upon the power of cities to levy assessments. We have heretofore adverted to the fact that it prevented pyramiding assessments, an evil against which the property-owner was powerless to protect himself, and resulted in much of the property assessed failing to respond in foreclosure.

Whether the legislature has adopted the proper limitations to bring about a condition where no district will fail to produce sufficient amount, either by voluntary payment or foreclosure, to pay all the bonds without any loss whatever accruing to the guaranty fund, is a matter that time alone can show. That is a matter to be left to the wisdom of the legislature, and we can not and will not assume that the purposes it had in

mind will fail of attainment. Rather will we assume that the results anticipated will be realized until the contrary clearly appears.

The judgment is affirmed.

MAIN, MITCHELL, TOLMAN, PARKER, and FRENCH, JJ., concur.

MACKINTOSH, C. J. (dissenting)—I am satisfied that the act is unconstitutional for the reason that it increases the debt limit and therefore dissent.

BRIDGES, J., concurs with MACKINTOSH, C. J.