[No. 25534. Department One. September 3, 1935.]

THE STATE OF WASHINGTON, *on the Relation of Washington Mutual Savings Bank, Respondent,* v. THE CITY OF BELLINGHAM *et al., Appellants.*[1]

*Hobart S. Dawson,* for appellants.

*Tim Healy* and *Tanner & Garvin,* for respondent.

BEALS, J.—This proceeding was instituted on the relation of Washington Mutual Savings Bank, a corporation, for the purpose of procuring a writ of mandamus requiring the city of Bellingham, a municipal

[1]Reported in 48 P. (2d) 609.

corporation, and certain of its officers, to issue and approve warrants in favor of relator, drawn upon the local improvement guaranty fund of the city of Bellingham, in payment of bonds numbered 8 to 28, inclusive, together with interest coupons attached thereto, issued by the city of Bellingham in connection with local improvement district No. 869 (this district having defaulted), the total amount of the face of the bonds owned by the corporation being $2,100. The superior court granted the relief prayed for by the relator, and from the judgment directing that the writ issue, the city and its officers have appealed.

It appears that the city of Bellingham established its local improvement district No. 869 pursuant to resolution of intention passed June 15, 1926, the district having been established prior to January 1, 1927. It was provided that the cost of the improvement be assessed to the owners of property in the district, the ordinance setting up the district, which was enacted pursuant to the resolution above referred to, containing the following section:

"That the cost and expense of said improvement, including all necessary incidental expenses, payable by the mode of 'PAYMENT BY BONDS,' shall be borne by and assessed to the property included in the assessment district hereafter created, in accordance with the special benefits conferred on such property in proportion to area and distance back from the marginal lines of the street, and the city of Bellingham shall not be liable in any manner for any portion of the cost and expense of said improvement."

Under date September 2, 1926, the city contracted for the work to be done, the contract, *inter alia,* providing:

"All of said payments shall be made by Local Improvement Warrants and bonds issued in accordance with the charter and ordinances of the city of Belling-

ham, and the laws of the state of Washington upon Local Improvement Fund District No. 869 and the said parties of the second part agree to look solely to said Local Improvement Fund District No. 869 for the payment for said work, and in no event shall the city of Bellingham, in its corporate capacity, become liable under this contract for the payment of any sum whatsoever."

The L. I. D. bonds issued in payment of the work, upon some of which respondent based this action, contain, among many others, the following provisions:

"Payable annually out of the fund established by ordinance No. 4464 of said city and known as Local Improvement Fund District No. 869 of Bellingham, and not otherwise, both principal and interest payable at the office of the treasurer of said city."

"And the said Local Improvement Fund District No. 869 of Bellingham, has been established by ordinance for said purpose, and the holder or holders of this bond shall look only to said fund for the payment of either the principal or interest of this bond."

"This bond is also issued pursuant to chapter 183, Session Laws of the Legislature of the state of Washington for the year 1925."

Prior to the issuance of any of these bonds, over two thousand dollars was expended in payment of statutory charges and in redeeming outstanding warrants, bonds totaling $3,700 being issued and sold. The assessment roll, as certified by the treasurer, called for assessments in the amount of $5,836.55.

Upon presentation by respondent of its bonds, the city admitted its liability thereon, through its local improvement guaranty fund, in an amount equal to five per cent of $5,836.55; later pleading an admission of its liability to respondent in such an amount, referring in its amended answer to its admitted liability as in "an amount equal to five per cent of the bonds or warrants issued" by the district.

The trial court held that the city's liability was not so limited; but that, through its local improvement guaranty fund, the city was responsible to respondent up to an amount equal to five per cent of the total amount of all local improvement district bonds or warrants issued subsequent to April 7, 1926. In other words, the trial court held that chapter 183, Laws Ex. Sess. 1925, p. 551, provided for a complete guaranty of all bonds and warrants issued in connection with local improvement districts subsequent to April 7, 1926, up to the five per cent of the total outstanding district obligations. It is stated that the trial court held that, if the statute above referred to did not have the effect of rendering the city liable as aforesaid, then that statute is indefinite and uncertain, and that, if such be the case, pursuant to the provisions of chapter 209, Laws of 1927, p. 308 (Rem. Rev. Stat., § 9351-1 [P. C. § 1071-1] *et seq.*), a full and complete guaranty (upon the basis above referred to) is established, the latter law being construed to be retroactive to accomplish such a result.

Appellants contend that the trial court erred in holding that chapter 183, Laws Ex. Sess. 1925, p. 551, should be construed in accordance with respondent's contention, or is indefinite and uncertain; in holding that the city of Bellingham is liable to respondent in any sum greater than the amount which it admits it should pay; in construing chapter 209, Laws of 1927, p. 308, as applying to bonds issued prior to the passage thereof; and in granting judgment in relator's favor, pursuant to such a construction of that statute. Appellants also contend that the trial court erred in sustaining demurrers interposed by respondent to appellants' answer and first amended answer, and in entering the judgment appealed from.

The action was determined by the trial court upon

the pleadings, respondent having demurred to the amended answer interposed by appellants to respondent's complaint, and the trial court having sustained this demurrer. The appellants then elected to stand upon their amended answer and declined to plead further, whereupon the trial court entered judgment directing the issuance of the writ of mandate, which judgment is now before us for review.

It appears that outstanding obligations of local improvement districts of the city of Bellingham on account of local improvements ordered after April 7, 1926, aggregate a large sum—such an amount that five per cent thereof greatly exceeds respondent's claim upon its bonds.

Prior to 1917, the owner of a municipal local improvement bond could rely for payment thereof only upon the fund raised by payment of assessments levied upon property within the district. The bondholder had no protection against defaulting districts, which, as time went on, became more and more numerous. Continued defaults in payment of these bonds lessened the value of all securities of that class and affected the credit of the cities of this state.

Remedial legislation was enacted in 1917 by chapter 138, p. 576, of the session laws of that year. By that act, it was provided that any city of the first class might, by ordinance, create a fund to secure the payment of local improvement bonds. The statute gave the cities the option of setting up such a fund or not, as they might deem wise.

By chapter 141, Laws of 1923, p. 454, the option to set up such a fund was extended to all cities and towns. The act last referred to was amended by chapter 183, p. 551, of the laws passed at the extraordinary session of 1925, which act established a guaranty fund for each city or town issuing local improvement bonds. This

act became effective April 7, 1926, and, as above set forth, each of respondent's bonds states on its face that it is issued pursuant to this act. By chapter 209, Laws of 1927, p. 308 (Rem. Rev. Stat., §§ 9351-1 to 9351-5 [P. C. §§ 1071-1—1071-5]) there was established for each city and town in the state

" . . . a fund for the purpose of guaranteeing to the extent of such fund and in the manner hereinafter provided, the payment of its local improvement bonds and warrants issued to pay for any local improvement ordered; . . . (c) In any other city or town, subsequent to April 7, 1926:"

this provision of the act being applicable to appellant city. In compliance with the act of 1927, the city of Bellingham, by ordinance, established

" . . . a fund for the purpose of guaranteeing . . . payment of its local improvement bonds and warrants issued to pay for any local improvement ordered subsequent to April 7, 1926."

This ordinance enacted by appellant city purports to guarantee payment of bonds issued to pay for any local improvement ordered subsequent to April 7, 1926. The local improvement district whose bonds respondent holds was created July 12, 1926, the bonds, of course, having been issued at some subsequent date.

The act of the extraordinary session of 1925 provides for the creation of one fund for each city, not a separate fund for each district; the fund to receive a portion of its revenues from a tax credit in an amount equal to five per cent of the total obligations guaranteed. Five sources of revenue are provided for the augmentation of the fund: First, a levy pursuant to the tax credit above referred to; second, the fund is subrogated to the rights of the holders of securities paid from the fund; third, interest on bank deposits; fourth, any surplus remaining in any local improve-

ment fund after the payment of all outstanding obligations; and, fifth, any money received from the lease or sale of property acquired by foreclosure proceedings.

Appellants vigorously contend that the act of 1925 is not ambiguous and should be construed as limiting the protection accorded to respondent, as a local improvement district bondholder, to an amount equal to five per cent of $5,836.55, this being the amount of the cash payment made by the district added to the face value of the bonds which it issued, and, of course, also equal to the amount of the assessments levied for the particular improvement in connection with which respondent's bonds were issued. Appellants also contend that the act of 1927 is not retroactive, and that respondent can claim no benefit or relief thereunder.

■■ In considering the legal questions to be here determined, the legislative history of the acts above referred to is important. It is clear that, since 1917, it has been the endeavor of the legislature to place municipal local improvement district securities upon a better financial basis than that upon which they previously rested. Manifestly, the statutes referring to guaranty funds have been progressively strengthened and widened in their application, so as to give effect to the evident legislative policy. These acts have been considered by this court in the cases of *Comfort v. Tacoma,* 142 Wash. 249, 252 Pac. 929; *Hallahan v. Port Angeles,* 161 Wash. 353, 297 Pac. 149; *Kelly v. Sunnyside,* 168 Wash. 95, 11 P. (2d) 230.

In considering different statutes enacted by the same legislative authority, all relating to the same subject matter, the entire sequence should be considered in placing a judicial construction upon any one of the acts. This rule is well stated in 59 C. J. 1042, title Statutes, § 620.

The act of 1925 amended or repealed each of the sections of the act of 1923 referring to guaranty funds. By the act of 1925, the setting up of such a fund was made mandatory upon all cities and towns in the state, thereby greatly extending the principle of the guaranty of L. I. D. securities. It is not reasonable to suppose that, on the one hand, the legislature, by making the maintenance of such a fund mandatory upon all municipalities, at the same time, greatly limited its effect by extending the protection of the act to securities of a defaulting district only up to an amount equal to five per cent of the obligations of that particular district. Manifestly, this would amount to little more than a gesture, a phantom protection which would reduce the actual guaranty below the point of practical usefulness.

Respondent argues, and we think effectively, that the act of 1927 interprets the act of 1925 by making the effective date of the former act, as to cities in the same situation as is appellant, April 7, 1926, on which date the act of 1925 became effective. The act of 1923 provided that the five per cent should be computed with regard to the outstanding bond obligations guaranteed by the fund. The act of 1927, in cases where a fund had been voluntarily established by a municipality, relates back to the date of the setting up of such fund.

Section 2, chapter 183, Laws Ex. Sess. 1925, p. 552, reads as follows:

"Such fund shall be designated 'Local Improvement Guaranty Fund.' For the purpose of maintaining such fund every city or town issuing local improvement bonds or warrants after April 7, 1926, shall be deemed and held to have pledged to the fund a tax credit of the city or town in an amount equal to five per cent of the bonds or warrants so issued. The credit so pledged shall not constitute an indebtedness of the city or town within the meaning of any statutory or charter pro-

visions or limitation respecting indebtedness. Such pledge shall be deemed to have been made, as to any particular local improvement district, upon the delivery of the roll to the treasurer of the city or town for collection. Such pledged tax credits, with the other resources of the fund enumerated in section 3 hereof, shall constitute a reserve wherewith to purchase defaulted bonds and warrants guaranteed by the fund. As among the several issues of bonds or warrants guaranteed by the fund no preference shall exist, but defaulted interest coupons, bonds and warrants shall be purchased out of the fund in the order of their presentation.''

Section 3 of the act provides for the levying, from time to time, of such sums as may be needed to meet the requirements of the fund, ''but not in excess of the total of the tax credits pledged by this act to the guaranty fund;'' § 3 also containing a proviso as follows:

''*Provided,* That no warrants shall be issued against the guaranty fund in excess of the cash therein and the tax credits pledged thereto as provided in section 2 of this act: *Provided further,* That no taxes shall be levied for the fund in excess of the tax credits so pledged by section 2 hereof, and that the tax levies herein directed shall be additional to and if need be in excess of any and all statutory and charter limitations applicable to the tax levies of any city or town affected by this act.''

The word ''fund,'' as used for the second time in § 2, *supra,* refers to the same word when first used in the same section, that is, the guaranty fund. The bonds or warrants issued by the municipality referred to in this section include all such credits issued after April 7, 1926. The pledge or guaranty attaches to the securities issued by each district upon the delivery of the assessment roll to the municipal treasurer for collection.

Appellants argue that § 2 of the act of 1925, by

referring to the tax credit, which manifestly is the chief source of the revenue to be paid into the guaranty fund, as being in an amount "equal to five per cent of the bonds or warrants so issued," limits the right of a bondholder, as hereinabove set forth, to five per cent of the obligations issued by that particular district. The first portion of § 2 refers generally to "every city or town issuing local improvement district bonds or warrants after April 7, 1926." We cannot follow appellants' argument upon this phase of the act. The words "bonds or warrants" refer generally to such local improvement obligations issued by any local improvement district set up by the municipal authority.

After careful examination of the act of 1925, and considering the act in connection with its history and in its proper relation to the act of 1927, we are of the opinion that the act establishes one fund, to which the owner of any bond issued by a local improvement district which is in default may have recourse, "in the order of their presentation," up to the amount of the fund, as provided by the act. Any other interpretation of the statute does violence both to the language of the act and the established rules governing statutory construction.

Respondent, as a bondholder, may rely upon the statute, even though it might be contended that the language of the city ordinance providing for the improvement, or the wording of the bonds, might limit his rights. *Comfort v. Tacoma, supra.*

Appellants cite an opinion rendered by the office of the *Attorney General* of the state; but, conceding that executive construction of a statute should be given consideration, we find nothing in the opinion which leads us to any view contrary to that herein expressed.

The trial court did not err in deciding that respondent was entitled to the relief which it sought in this proceeding, and the judgment appealed from is accordingly affirmed.

BLAKE, GERAGHTY, MAIN, and TOLMAN, JJ., concur.