[No. 27118. Department One. July 15, 1938.]

*In the Matter of* LOCAL IMPROVEMENT DISTRICT NO. 1 OF WATER DISTRICT NO. 49, KING COUNTY.[1]

*Fairbrook & Williams* and *Cyril D. Hill* (*Elliott W. Reynolds,* of counsel), for appellants.

*Kenneth Durham* and *John J. Kennett,* for respondent.

*Weter, Roberts & Shefelman, amicus curiae.*

[1] Reported in 81 P. (2d) 289.

SIMPSON, J.—This action was instituted as an appeal to the superior court of King county, taken by virtue of the provisions of Rem. Rev. Stat., § 11591 [P. C. § 7249-23], from an assessment roll filed by the commissioners of water district No. 49 of local improvement district No. 1 of that county.

The cause was tried to the court, and decree entered February 5, 1938, granting the appellants certain reductions from the amounts entered against their respective properties shown upon the assessment roll, confirming the assessments as reduced, and adjudging chapter 102, Laws of 1937, p. 409, Rem. Rev. Stat. (Sup.), §§ 11589-1 to 11589-3 [P. C. §§ 7250-24b to 7250-24d], authorizing water districts to establish local improvement guaranty funds and resolution No. 56 of water district No. 49, is not violative of the constitution of this state or the Federal constitution, and denied the injunction prayed for.

Resolution No. 56 provided for the creation of the guaranty fund under the provisions of the act known as chapter 102, Laws of 1937.

This appeal is prosecuted by the parties named in the record as appellants from the decision of the commissioners in making the assessment roll. They appeal on behalf of themselves and all of the other numerous property owners in the district.

The only contention made by appellants is that chapter 102, *supra* (Rem. Rev. Stat. (Sup.), §§ 11589-1 to 11589-3 [P. C. §§ 7250-24 b to 7250-24 d]), is in violation of and repugnant to the fourteenth amendment of the Federal constitution and Art. I, § 3 of the constitution of the state of Washington, in that it deprives appellants of their property without due process of law and denies to them the equal protection of the laws, and further that the act is discriminatory within the

meaning of §§ 2 and 9 of Art. VII of our state constitution.

Their definite objection is that the act vests an inordinate discretion in the commissioners of a water district in authorizing the setting aside of a district's gross revenue of twenty per cent for the creation of a guaranty fund; that the act would permit such commissioners to act arbitrarily, there being no provision for a hearing or any opportunity for parties affected to be heard in protest against any rule or resolution of the commissioners in creating or maintaining the fund.

An act of the legislature can only be overthrown when it is contrary to some specific limitation or prohibition in the constitution and will be upheld as valid whenever possible.

In *State ex rel. Case v. Howell,* 85 Wash. 294, 147 Pac. 1159, Ann. Cas. 1916A, 231, the court stated:

"On the other hand, however, it is equally well settled that the courts should not declare a law repugnant to the constitution without a strong conviction divested of all reasonable doubt. *Ah Lim v. Territory,* 1 Wash. 156, 24 Pac. 588, 9 L. R. A. 395. The existence of a reasonable doubt acquits an act of violence to the constitution. 'Where doubt exists . . . the act is sustained.' *State ex rel. School Dist. No. 24 v. Grimes,* 7 Wash. 270, 34 Pac. 836."

The act in question amends and supplements chapter 2, title 84, Rem. Rev. Stat., § 11579 [P. C. § 7249-11] *et seq.,* and is designed to reestablish and maintain the credit of local water districts created for public supply systems. Its provisions authorize every water district in the state to create a fund for the purpose of guaranteeing the payment of its local improvement bonds issued subsequent to the effective date of the act. The fund is established by resolution of the board of water commissioners, and is created and maintained by ap-

propriating certain proportions of the gross revenues of the water supply system not to exceed twenty per cent of the gross income thereof. The conditions governing the proportions of the district's gross revenues to be set aside are set forth in § 1, subds. (a) and (b), p. 409, chapter 102, Laws of 1937, as follows:

"(a) Whenever any bonds of any local improvement district have been guaranteed under this act and the guaranty fund does not have a cash balance equal to twenty per cent (20%) of all bonds originally guaranteed under this act, (excluding issues which have been retired in full) then twenty per cent (20%) of the gross monthly revenues derived from all water users in the territory included in said local improvement district (but not necessarily from users in other parts of the water district as a whole) shall be set aside and paid into the guaranty fund: *Provided, however,* that whenever, under the requirements of this subsection, said cash balance accumulates so that it is equal to twenty per cent (20%) of all bonds guaranteed, or to the full amount of all bonds guaranteed, outstanding and unpaid (which amount might be less than twenty per cent (20%) of the original total guaranteed), then no further monies need be set aside and paid into the said guaranty fund so long as said condition shall continue;

"(b) Whenever any warrants issued against the guaranty fund, as hereinbelow provided, remain outstanding and uncalled for lack of funds for six (6) months from date of issuance thereof; or whenever any coupons or bonds guaranteed under this act have been matured for six (6) months and have not been redeemed either in cash or by issuance and delivery of warrants upon the guaranty fund, then twenty per cent (20%) of the gross monthly revenues (or such portion thereof as the commissioners of the water district determine will be sufficient to retire said warrants or redeem said coupons or bonds in the ensuing six (6) months) derived from all water users in the water district shall be set aside and paid into the guaranty fund: *Provided, however,* That whenever under

the requirements of this subsection all warrants, coupons, or bonds specified in this subsection above have been redeemed, no further income need be set aside and paid into said guaranty fund under the requirements of this subsection until and unless other warrants remain outstanding and unpaid for six (6) months or other coupons or bonds default; . . ." Rem. Rev. Stat. (Sup.), § 11589-1 [P. C. § 7250-24 b], subds. (a), (b).

Other provisions of the act provide for the administration of the district, the fixing of rates, and that, when payment is made out of the guaranty fund on account of the payment of principal or interest, or the purchase of certificates of delinquency issued against property assessed to construct the water system, the water district as trustee of the fund shall be subrogated to the rights of the holders of the bonds, interest coupons, or delinquent assessment installments so paid. Further provision is made for the use of the guaranty fund in paying for private property subject to unpaid local improvement assessments securing the guaranteed bonds when the property is sold by the county for failure to pay general taxes.

The development of the legislation concerning the creation of guaranty funds to protect local improvement bonds is set out in the case of *State ex rel. Kuehl v. Seattle, ante* p. 110, 79 P. (2d) 974.

In 1935, an attempt was made by the legislature to provide a guaranty fund for water districts. (Chapter 82, Laws of 1935, p. 193.) The law did not fill the need for an adequate guaranty fund, and accordingly was amended by the act in question.

A consideration of these acts discloses a legislative intent to stabilize local improvement bonds, and thereby secure to property specially benefited by the improvement a large saving in initial cost by rendering such bonds more merchantable.

The reasons for the passage of the guaranty funds acts were definitely stated in *Comfort v. Tacoma*, 142 Wash. 249, 252 Pac. 929, as follows:

"Prior to 1917, many of the cities of the state of Washington had outstanding local improvement bonds which were unpaid, and practically valueless. The failure to meet these bonds at maturity was due to many causes, including the lack of necessary restrictions to prevent pyramiding assessments, but the ultimate result thereof was to impair the credit of the cities of the state. and a consequent lowering of the value of the bonds. Countless numbers of these bonds were purchased by persons unskilled in such matters who failed to grasp the fact that the obligations which the bonds represented were not legally those of the city, but were restricted to the particular fund created by the assessment, although bearing upon their face words indicating to the casual observer a promise to pay by the municipality."

The case of *State ex rel. Washington Mutual Sav. Bank v. Bellingham*, 183 Wash. 415, 48 P. (2d) 609, is of like import.

■ Appellants contend that chapter 102, *supra*, violates our frequently pronounced rule that property within local improvement districts may only be assessed in accordance with the benefits received. However, the funds created by this act are not derived from special assessments, but only from the income of water districts.

"Special assessments are special charges imposed by law on land to defray the expenses in whole or in part of a local improvement made by a municipality, on the theory that the owner of the property has received special benefits from the improvement in excess of the benefits accruing to the general public." 44 C. J. 481, § 2806.

The act, which establishes a trust fund from gross income for the protection of bondholders, results, in

fact, in the protection of the property that was assessed to provide a water system, and does not in any way authorize a special assessment against any real estate within the water district.

Appellants have no property rights in the income of the water system nor any right to any established water rate. Therefore, they are not deprived of property without due process of law or the equal protection of laws within the meaning of the Federal and state constitutions.

■ Appellants next contend that chapter 102, *supra,* opens the way to arbitrary acts of the commissioners.

Arbitrary action by public officials is never to be presumed. *Twichell v. Seattle,* 106 Wash. 32, 179 Pac. 127. However, if it should happen that any board of commissioners should act abitrarily, those interested would have adequate remedy in equity or by mandamus.

There is no substantial distinction between the results sought to be accomplished by chapter 102, *supra,* and the acts providing for local improvement district guaranty funds for cities and towns. In holding the last named acts constitutional, we said in *Comfort v. Tacoma, supra:*

"It is next urged that to tax appellants' property, which receives no special benefit, to guarantee a payment of bonds issued against other property, is contrary to law, because the whole theory of local assessments is one of special benefits to the property assessed. But this is not a special assessment. The city has the right to initiate local improvements and to pay the whole cost thereof out of general taxes. This tax is imposed on all alike, and is general in its application. A benefit accrues to every property owner because the additional guaranty of the bonds is reflected naturally in the increased price at which the bonds sell, thereby reducing the cost of all improvements. In time, every

446

property owner will come within some improvement district, either for original improvements or for new improvements to take the place of those worn out or obsolete, and thus receive a benefit at that time by reason of the increased value of the bonds."

We are of the opinion that chapter 102, Laws of 1937, does not in any way infringe upon any constitutional provision, and is a valid act.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and GERAGHTY, JJ., concur.