WICKS v. SALT LAKE CITY et al.

No. 3808.   Decided June 14, 1922.   (208 Pac. 538.)

1. MUNICIPAL CORPORATIONS—LIGHTING STREET IS FOR PUBLIC PURPOSE TO AFFORD COMFORT AND CONVENIENCE TO PUBLIC. The primary purpose of lighting a street is to afford comfort, safety, and convenience to those who use it without regard to whether or not they own property on the lighted street, and this is a public purpose, and the enhancement of the value of abutting property is merely incidental in view of Comp. Laws 1917, § 570x12, 570x14, 570x19, and 570x20.

2. MUNICIPAL CORPORATIONS—CITY'S GUARANTY OF PAYMENT FOR STREET LIGHTING OF PORTION OF CITY HELD CONSTITUTIONAL. Comp. Laws 1917, § 671 as amended by Laws 1921, c. 14, subd. 5, authorizes the city to levy 3½ mills on the dollar to construct and maintain gas works, electric light works, etc., so that, in view of Laws 1921, c. 9, §§ 1-6, relating to city improvements, the city's guaranty of payment therefor does not violate the Constitution.[1]

3. MUNICIPAL CORPORATIONS—CITY MAY ESTABLISH SPECIAL IMPROVEMENT GUARANTY FUND FOR PAYMENT FOR LIGHTING DISTRICT IT HAS ORGANIZED. In view of Comp. Laws 1917, § 671, and Laws 1921, c. 14, subd. 5, and chapter 9, §§ 1-6, a city has power

---

[1] Booth v. Midvale, 55 Utah 220, 184 Pac. 799; D. & R. G. Ry. Co. v. Grand County, 51 Utah 294, 170 Pac. 74, 3 A. L. R. 1224.

to light the streets by draft upon the general fund if it elects to organize a district as in this case and levy a special tax on abutting property to pay the expense; and issue bonds therefor, and has also power to establish a special improvement guaranty fund to secure the payment of the bonds as provided by statute.

4. CONSTITUTIONAL LAW—STATUTE PERMITTING CITY TO GUARANTEE PAYMENT FOR IMPROVEMENTS DOES NOT VIOLATE DUE PROCESS CLAUSE. The provisions of Laws 1921, c. 9, §§ 1-6, relating to city improvements and special improvement fund is not violative of Const. art. 1, § 7, relating to due process.

5. MUNICIPAL CORPORATIONS—STATUTE FOR SPECIAL IMPROVEMENT GUARANTY FUND FOR CITIES HELD NOT TO VIOLATE CONSTITUTIONAL PROVISIONS LIMITING INDEBTEDNESS AND PROVIDING FOR SUBMISSION TO VOTE. Const. art. 14, § 3, providing that no debt in excess of taxes for the current year shall be incurred by a city unless the proposition to create the debt is first submitted to the qualified electors, and section 4, limiting the amount of indebtedness that may be created when authorized in the preceding section, are not violated by Laws 1921, c. 9, §§ 1-6, relating to special improvement guaranty fund for cities, particularly where there is little, if any, change of such guaranty fund being permanently depleted, since private property would be sold for the special assessments against it, and the proceeds returned to such fund.

6. CONSTITUTIONAL LAW—LAW NOT DECLARED UNCONSTITUTIONAL IN CASE OF DOUBT. In case of reasonable doubt a law will not be declared unconstitutional.

Original proceedings by E. B. Wicks against Salt Lake Ctiy and others to prohibit such City from issuing certain special improvement bonds for a lighting district.

Temporary writ of prohibition QUASHED, and permanent writ DENIED.

*C. W. Boyd*, of Salt Lake City, for plaintiff.

*Wm. H. Folland*, City Atty., of Salt Lake City, for defendants.

THURMAN, J.

Plaintiff seeks by this proceeding to prohibit Salt Lake City and its officers from issuing certain special improvement bonds for lighting district No. 6, as contemplated in a certain resolution adopted by the board of commissioners of said city.

Lighting district No. 6 of Salt Lake City covers and includes all of the abutting property on both sides of State street between South Temple and Fourth South streets. The improvement contemplated within the district is the erecting, constructing, and installing of the necessary ornamental standards and luminous arc lights for the purpose of lighting said street.

It is conceded by the plaintiff that the proceedings relating to said district and the contemplated improvement thereof prior to the adoption of the resolution authorizing the city auditor to issue and deliver the bonds in question were regular and according to law, but it is contended by plaintiff that the auditor is without power or authority to issue said bonds because of the following paragraph contained therein:

"A special improvement guarantee fund has been created by said city as provided in chaper 9, Laws of Utah 1921, and said city agrees that at all times during the life of this bond and until payment thereof in full said fund shall be at all times maintained. This bond is payable exclusively out of said special tax and the said special improvement guarantee fund, and neither said city nor any officer thereof is holden for the payment thereof otherwise."

Plaintiff is a resident of Salt Lake City and a property owner in District No. 6 and challenges the right of said city, and the auditor thereof, to issue said bonds incumbered with the paragraph heretofore quoted for the reason that it attempts to impose an obligation upon the city which is beyond its constitutional power to discharge.

Plaintiff concedes the right of the city to issue its negotiable coupon bonds for the purpose of raising money with which to make improvements by installing such lighting system, provided such money is raised exclusively from the levy and assessment of special taxes upon the property ad-

jacent to or abutting upon the street benefited by such improvement. The objection, however, is that by the issuing of said bonds containing the objectionable paragraph referred to the city threatens to either levy a general tax for the payment of such bonds, if necessary, or to pay the same, and the interest thereon, from the general fund of the city.

The provision in the bond providing for a special improvement guaranty fund to which objection is made by plaintiff is expressly authorized by legislative enactment. See Session Laws 1921, c. 9. The act is deemed of sufficient importance to quote at length:

"Section 1. Any city or town which has issued, or may hereafter issue, any special improvement bonds or warrants, shall by appropriation from the general fund or by the levy of a tax of not to exceed one mill in any one year, or by the issuance of general obligation bonds, or by appropriation from such other sources as may be determined by the board of commissioners, or city council, or board of town trustees, as the case may be, create a fund for the purpose of guaranteeing, to the extent of such fund, the payment of bonds or warrants and interest thereon, issued against local improvement districts for the payment of local improvements therein. Such fund shall be designated as 'special improvement guaranty fund.'

"Sec. 2. All excess interest charges and penalties collected by the city or town for the benefit or credit of any special improvement fund and remaining on hand after all the bonds or warrants, together with interest thereon, drawn against said special improvement fund shall have been fully paid and canceled, shall be transferred by the treasurer to the said special improvement guaranty fund.

"Sec. 3. When any bond, warrant or coupon drawn against any special improvement fund is presented to the city or town for payment, and there is not sufficient amount in said special improvement fund against which it is drawn to pay the same, unless otherwise requested by the holder payment therefor shall be made by warrant drawn against the special improvement guaranty fund.

"Sec. 4. In the event that any property is sold to the city at tax sales or under foreclosure for delinquent special improvement taxes, said purchase shall be made by warrant drawn against the special improvement guaranty fund. All proceeds from the redemption or sale of property sold under foreclosure or of certificates of tax sale held by the city or town shall be paid into the special improvement guaranty fund.

"Sec. 5. Whenever there is not a sufficient amount of cash in

said special improvement fund at any time to make any and all purchases of property bid in by the city or town at sales of property for delinquent special improvement taxes, the board of commissioners, or city council, or board of town trustees, as the case may be, may replenish said special improvement guaranty fund by transfer or appropriation from the general fund of the city or town, or other available sources as may be determined by said board of city commissioners, or city council, or board of town trustees. Warrants drawing interest at a rate of not to exceed eight per cent. (8%) per annum may be issued against said fund to meet any financial liabilities accruing against it; but at the time of making its next annual tax levy, the city or town shall provide for the levy of a sum sufficient with the other resources of the fund to pay warrants so issued and outstanding, the tax for this purpose not to exceed one mill in any one year.

"Sec. 6. Whenever the city or town shall have paid under its guaranty any sum on account of principal or interest on the bonds or warrants of any district, it shall be subrogated to the rights of the holders of such bonds or warrants or interest coupons so paid, and such bonds or warrants or coupons, and the proceeds thereof, shall become a part of the guaranty fund."

It is contended by plaintiff that the city has no power to create a special guaranty fund for the payment of said bonds or the interest thereon or to levy a general tax in any amount for said purpose or to pay the same from the general fund. In short, it is contended that the city has no right to pledge the taxing power of the city for said purpose without submitting the question to the qualified electors of the city for their determination.

The validity of sections 1 and 5 of the act just quoted are challenged as being in conflict with article 1, § 7, of the state Constitution, which provides:

"No person shall be deprived of life, liberty or property without due process of law."

The gist of plaintiff's contention is illustrated by the following excerpt from the brief of his able counsel:

"We think it cannot be successfully maintained that the establishment of the lighting district is in reality for a 'public purpose.' Practically the only persons materially benefited are those owning property adjacent to or abutting upon the street along which the lighting district extends, and hence a general levy of taxes throughout the city for the purpose of establishing and maintaining such lighting district would violate the provisions of the Constitution

above quoted. Why should A., whose property lies wholly without the lighting district, be compelled to pay taxes for B., whose property lies wholly within the lighting district, for the installation and maintenance of the lighting system, when no benefits arising therefrom accrue to A.?

The assumption of plaintiff that the proposed improvement was not for a public purpose flies in the face of an obvious truth. The primary purpose of lighting a street is to afford comfort, safety, and convenience to those who use the street without regard to whether or not they own property in the lighted district. This is certainly a public purpose. The enhancement of the value of abutting property is merely incidental to the main purpose.

The Legislature of this state, however, has determined the question in divers enactments found in Comp. Laws Utah 1917. Section 570x12 provides for the lighting, sprinkling, and cleaning of streets; section 570x14 provides for the construction and maintenance of waterworks, gas works, electric light works, etc.; section 570x19 provides for contracting with and authorizing any person, company, or association to construct gas works, electric or other lighting works in the cities, and gives such persons, company or association the privilege of furnishing light for the public buildings, streets, sidewalks, and alleys; section 570x20 also provides for lighting the streets, and other matters incident thereto. These various statutes are legislative declarations to the effect that provisions for lighting the streets of our cities constitute a public purpose for the establishment and maintenance of which taxes may be levied and collected within such limitations as may be provided by law.

Comp. Laws Utah 1917, § 671, as amended in chapter 14, Sess. Laws 1921, subd. 5, authorizes the city to levy 3.5 mills on the dollar to construct and maintain gas works, electric light works, telephone lines, street railways or bathhouses.

It thus appears that the Legislature has not only declared the lighting of streets within our cities to be a public purpose, but it has gone even further and expressly provided for meeting the expense thereof by taxation. Under these

provisions of the statute, the validity of which cannot be successfully challenged on constitutional grounds, it is difficult to see how plaintiff's contention in the case at bar can be successfully maintained. The city had the undoubted right if it chose so to do, to provide for the lighting of the street in question and cast the burden thereof on the taxpayers of the entire municipality. It was not under the necessity of creating a special improvement district at all. It was not incumbent upon the city to impose the burden exclusively upon the owners of the abutting property. How then can it be consistently contended that the city is without power, especially when authorized by the Legislature to provide a special guaranty fund for the payment of the bonds in question, and interest, in the remote contin- **2** gency that the necessary funds cannot be obtained from assessments made upon the abutting property? The proposition seems to me to be incontrovertible that, if the city has the power to pay for lighting the street from taxes paid upon all the property in the city, it has the power to guarantee the payment of an obligation which at the most, is so contingent as to be barely possible.

In *Booth* v. *Midvale,* 55 Utah, 220, 184 Pac. 799, this court held that the city had the power to pay the expense of paving a street through the city from the general fund, notwithstanding the contention was made that the contemplated improvement benefited only those who owned property abutting on the street. The statutes conferring power upon the city to pave and improve streets and pay for the same from the general funds of the city are no broader in the powers conferred than are the statutes to which we have referred relating to the establishment and maintenance of systems for lighting the streets.

See, also, as bearing upon the question of taxation for a public purpose, *D. & R. G. Ry. Co.* v. *Grand County,* 51 Utah, 294, 170 Pac. 74, 3 A. L. R. 1224.

In that case appellant challenged the validity of the statute authorizing county commissioners to provide a fund for the partial support of mothers dependent upon their own

efforts for the maintenance of their children. It was there contended the same as here, that the object sought to be achieved was not a public purpose, and that therefore the act was iin contravention of article 1, § 7, of the state Constitution, relied on by plaintiff in the instant case. This court held the act to be for a public purpose, and not in violation of the Constitution.

In the light of these decisions and the various statutes referred to there can be no doubt as to the power of the city to light the streets of the city, or any section thereof, by draft upon the general funds. If the city elects, however, to organize a district, as in the instant case, and levy a special tax on abutting property to pay the expense, and issue bonds therefor, it is equally free from doubt that the city has the power to establish a special improvement guaranty fund to secure the payment of the bonds as provided in the act of 1921.

The court is of opinion that the provisions of the act assailed by plaintiff in this proceeding are not obnoxious to the due process clause of the state Constitution as far as concerns bonds or warrants issued since the passage of the act.

But plaintiff makes the further contention that the provisions of the 1921 statute violate sections 3 and 4 of article 14 of the state Constitution.

Section 3 provides, inter alia, that no debt in excess of the taxes for the current year shall be created by a city unless the proposition to create the debt is first submitted to a vote of the qualified electors.

Section 4 limits the amount of indebtedness that may be created when authorized in the preceding section.

It must be conceded that these provisions, like every other provision of the Constitution, are the paramount law of the state concerning the subjects to which they relate. Any law enacted by the Legislature in conflict therewith is null and void, but the conflict must first be made to appear. If there is any reasonable doubt about it, the law will not be declared unconstitutional. This is elementary doctrine.

Plaintiff does not contend that it manifestly appears that the act of 1921 attempts to authorize the creation of an indebtedness in excess of the limit fixed by the Constitution, but the contention seems to be that there is a vague and remote possibility that a literal compliance with the law may at some time in the future result in the creation of an indebtedness in excess of the constitutional limit. We seriously doubt if there is a sufficient showing on the part of plaintiff concerning this question to justify an extended discussion. Plaintiff no doubt has presented every argument that can be presented on that side of the question, but his argument is by no means convincing. To hold that a solemn act of the Legislature intended to support and maintain the credit of the municipalities of the state is unconstitutional on some vague theory that in its operation there is the barest possibility of a contingency arising in which there may be an infringement of the Constitution is going further than any case which has heretofore come under my observation.

It is shown by the record that Salt Lake City at the present time is clearly within the debt limit fixed and established by the Constitution. The taxable property within the limits of the city in round numbers is $193,000,000. It has already established a special improvement guaranty fund of slightly more than $61,000, which during the last year and a half since it has been in operation has proven amply sufficient without drawing upon the general fund or resorting to further taxation as provided in the act of 1921. The act provides that the bonds must be paid from the special taxes levied in the district and from the special improvement guaranty fund, and not otherwise. The assessment upon the abutting property is sufficient in amount to pay the bonds, and interest thereon, without even resorting to the guaranty fund. It is only in the event that the taxpayer fails to pay his tax when due that it becomes necessary to resort to the guaranty fund. If the property is sold for delinquent taxes the fund is replenished by the proceeds of the sale, or if the city purchases the property on delinquent sale, it must do so out of the fund, in which case the fund becomes the owner

of the property. When the guaranty fund and the proceeds of its accumulated assets have been exhausted, then, and only then, can resort be had to the general funds of the city.

The one-mill tax provided for in the 1921 statute will produce revenue to the amount of $190,000. This, when needed, will be used to replenish the guaranty fund. As before stated, the present fund of $61,000 has been found ample up to the present time without resorting to the other resources mentioned.

The writer confesses his inability to figure out the remotest probability of the city exceeding the constitutional debt limit in order to maintain its special improvement guaranty fund. Many other reasons might be stated, and are stated in defendants' illuminating brief, why plaintiff's contention should not prevail, but we deem it unnecessary to review them at length for the reason hereinbefore suggested that plaintiff has failed to show that it is at all probable that the statute of 1921 can or will be so operated as to create an indebtedness in violation of the Constitution.

The temporary writ heretofore issued is quashed and a permanent writ denied.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.