MARTHA ABEL, as Executrix Under the Last Will and Testament of GLEN ABEL, Deceased, et al.,

*Plaintiffs and Appellants,*

vs.

THE TOWN OF THE CITY OF GILLETTE, an Incorporated City,

*Defendant and Respondent.*

(No. 2622; January 12th, 1954; 265 Pac. (2d) 376).

For the plaintiffs and appellants the cause was submitted upon the brief and also oral argument of James Munro of Sheridan, Wyoming.

For the defendant and respondent the cause was submitted upon the brief and also oral argument of John P. Ilsley of Gillette, Wyoming.

OPINION

BLUME, Chief Justice.

The petition in this case alleges, stating the contents briefly, that the plaintiffs are owners of real property in Gillette, Wyoming, and owners of property assessed for special improvements as hereinafter mentioned; that on May 26, 1952, the town (of the city of) Gillette passed a resolution to create a special improvement

district, and advertised for objections thereto. No sufficient number of objections having been filed, the town council on June 17, 1952, created an improvement district, stating that the cost of the improvements (for paving, curbing and guttering) should be paid by assessments against the property in the district, and was not to be paid from the general fund or street fund of the town; that the council thereafter advertised for bids for the construction work, and received and accepted a bid from the Wyoming Improvement Company for $349,962.30 subject to the sale of bonds; that thereafter on February 2, 1953, the council called for bids for the bonds to be issued, but, after negotiations, received no bids; that thereafter on May 18, 1953, it appears from a resolution of the council, that the contractor would be willing to modify its contract, and receive bonds instead of cash for the work; that the same day, namely, May 18, 1953, the council purported to create a revolving local improvement fund, as authorized by Chapter 155 of the Session Laws of Wyoming of 1953, but that the attempt to do so was illegal for the reason that the resolution of the intention to create the improvement district did not and could not create such revolving fund, and that Chapter 155, supra, went into effect later than May 18, 1953, namely, May 25, 1953 (actually May 22, 1953). The prayer of the petition is as follows:

"1. That the defendant, its officers, agents and employees, be temporarily restrained, upon the filing of this action, from carrying out any of the terms of the contract for the construction of Improvement District No. 1 in the City of Gillette, Wyoming, including the issuance or payment of any bonds issued or to be issued in payment of said contract, and including the payment of any money or other action of any kind in furtherance of said contract.

"2. That the defendant, its officers, agents and employees, be permanently enjoined, after due notice and

hearing, from carrying out any of the terms of the contract for the construction of Improvement District No. 1 in the City of Gillette, Wyoming, including the issuance or payment of any bonds issued or to be issued in payment of said contract, and including the payment of any money to anyone or other action of any kind in furtherance of said contract.

"3. That all costs of suit herein be taxed against the defendant and that the plaintiffs have such other and further relief as may be equitable and proper in the premises."

The defendant, the town of Gillette, filed a demurrer to the petition on the ground that it failed to state facts sufficient to constitute a cause of action. The court sustained the demurrer, and the plaintiffs not pleading further, judgment was entered for the town, and the plaintiffs have appealed.

The controversy herein revolves round Chapter 155 of the Session Laws of 1953, which went into effect on May 22, 1953, and which permits a city or town council to create what is called a revolving local improvement fund, which is a special fund, auxiliary to assessments, and taken from the amount of gasoline or cigarette money which a city or town receives from the state. The statute provides that the city or town should annually advance for the revolving fund from such gasoline or cigarette money an amount not less than 2% of the total amount of bonds issued, for the length of time necessary to pay all the bonds, limiting the total of such money to 20% of the bonds. The statute further provides that such city or town should annually withdraw from the revolving fund and pay into the district improvement fund sufficient money to meet the difference between the principal amount of assessments due that year and the amount of assessments annually collected that year. Section 3 of Chapter 155, supra, amends Section 29-2050 W.C.S. 1945, as to what recital

the bonds of such district should contain. It appears herein, from the arguments of counsel, that the improvement district here involved comprises a very large part of the town, making the creation of the revolving fund specially proper.

The case has been ably presented by counsel of both sides, and the contentions herein were much elucidated at the oral argument. Some of the matters mentioned in the prayer of the petition were abandoned. Counsel for the appellants conceded that the assessments made herein are valid and no attack is now made thereon. It is also conceded by counsel for appellants that the bonds issued or to be issued herein are valid except in so far as they refer to and would be payable out of the revolving local improvement fund, and that only that part thereof is and would be invalid in so far as they refer to and would be payable in part out of such fund. That concession is, we think, in full accord with what we said in Henning v. Consolidated Building & Loan Co., 50 Wyo. 315, 62 P. (2d) 540, 543, where we held that even though bonds issued in connection with special improvements were invalid the money realized from special assessments should nevertheless be applied thereon. We said: "True, this act does not provide for the issuance of bonds. Whether that power would exist as an incident to the other powers granted need not be decided. The assessments herein were actually made for the benefit of the bondholders. That is undisputed, and hence they should, in equity, inure to their benefit." There can be no doubt that in the case at bar the special assessments were made for the benefit of the holders of the bonds to be issued herein, and hence should inure to their benefit, no matter what, if any defects or illegality may inhere in the bonds; and so we can in no event hold the bonds issued or to be issued herein are invalid as a whole or forbid the issuance thereof. The

prayer of the petition herein is broad and comprehensive and asks that the town be prohibited from issuing any bonds, or pay out any money on the contract with the contractor; it does not in terms ask that the revolving local improvement fund be declared invalid, or that the bonds be held invalid in that respect. But considering the petition as a whole and construing it liberally, in the face of the demurrer, as we must, and in the light of the oral argument, we shall consider it as asking only that the revolving fund be declared invalid, and that the bonds issued or to be issued should not receive any benefit therefrom.

Before proceeding further we should mention the fact that in accordance with Section 3 of Chapter 155 of the Session Laws of 1953, amending Section 29-2050, Wyoming Compiled Statutes 1945, bonds that are issued in connection with special improvements should contain the following clause:

"Neither the holder nor owner of any bonds issued under the authority of this Act shall have any claim therefor against the City or Town by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, or from the local improvement fund of such City or Town, but his remedy in case of non-payment, shall be confined to the enforcement of such assessments, *or for payment out of the Local Improvement Fund.* A copy of this section shall be plainly written, printed or engraved on each bond so issued." (Italics supplied.)

The only change made in the statute is by adding the italicized clause "or for payment out of the Local Improvement Fund." The statute is mandatory in terms, giving the impression that it is necessary to create such fund in such cases. But this is inconsistent with Sectio n1 of Chapter 155, supra. A city or town council under that section is not compelled to create such fund. It is permissive only. If the bonds are issued, which

refer to the fund, although no such is actually created, they would give the impression of the actual existence of such fund, and hence would be misleading. A purchaser of one or more of such bonds might easily be deceived and lose part or all of the money which he might pay therefor. We cannot believe that the legislature intended to deceive purchasers of such bonds, and hence the insertion of the clause above mentioned is, we think, mandatory only in cases in which the revolving fund mentioned has in fact been created.

It is contended by appellants, as already mentioned, that the bonds here involved, issued or to be issued, are and would be invalid in so far as purporting to be payable out of a revolving local improvement fund. Two reasons are advanced for that contention. In the first place it is contended that no such revolving fund has as yet been legally established for the reason that when the council of Gillette purported to establish such fund on May 18, 1953, Chapter 155 of the Legislative Act of 1953 was not yet in force and effect, the effective date of that Act being May 22, 1953. That contention appears to be well taken, and the judgment herein must be reversed for that reason. The council had no power on May 18, 1953, to create such fund. In Thompson v. City of Williamsburg, 229 Ky. 81, 16 S.W. (2d) 772, 774, the council made an assessment on property in accordance with the provisions of a legislative act that had been passed by the legislature, but was not yet in effect when the assessments were made. The court held that the assessments should have been made in accordance with the act in force at the time when they were made, the court saying in part: "But under our view of the law the original statute controls the case, and we are relieved of the necessity of construing the Amendatory Acts of 1928. The city may not act in anticipation of a power which it will possess at a later date. It may

act only upon the power reposed in it at the time the action is taken. The validity of its action must rest upon existing law. We have held that assessments for a street improvement made pursuant to an ordinance passed on a particular date must be governed by the law in force on that date, although the assessment may be made later. Reed v. Bates, 115 Ky. 437, 74 S.W. 234, 24 Ky. Law Rep. 2312." See also to similar effect Knickerbocker Ice Co. v. New York, 209 App. Div. 434, 204 N. Y. S. 632, affirmed in 239 N. Y. 595, 147 N.E. 210; Minnesota Transfer R. Co. v. City of St. Paul, 165 Minn. 8, 207 N.W. 320.

The second reason assigned by appellants for the invalidity of the bonds involved herein in the respects heretofore mentioned is that no such revolving local improvement fund may be created except when the resolution of intention to make the improvement is adopted and the district for the improvement is created. Section 1 of Chapter 155 of the legislation of 1953 provides as follows:

"Whenever a city or town council determines that improvements constructed in any local improvement district, authorized by Chapter 29, Article 20, Wyoming Compiled Statutes, 1945, confer general benefits on a City or Town in which such district is created, the City or Town Council *ordering and establishing* said district may create *concurrently* a fund to be known as the Revolving Local Improvement Fund." (Italics supplied.)

Counsel for appellant contends that the terms "ordering and establishing said district" refer to the time when the district is established, while counsel for the respondent contends that the terms merely refer to the council which acts in the matter. Counsel for appellant argues that if it were intended that the revolving fund might be established subsequent to the establishing of the district, the statute should have read "the city or

town council which has ordered and established said district" or a similar phrase. That is one view to take of the statute. On the other hand, if the legislature had intended that the revolving fund could be established only as contended by appellants, the statute, in order to remove all doubt, should have read "the city or town council when it orders and establishes the district," or more briefly *"when* ordering and establishing the district." So the meaning is doubtful. The statute conferred a new power upon cities and towns. It was intended to repair to some extent the unsavory reputation which local improvement bonds had attained in this state, so we should construe the legislation liberally in that light. Furthermore, if a city or town council should not deem it advisable to create the revolving fund when the district is created, and should proceed to pass a resolution of intention and establish the district, then set a time for hearing on the resolution, have such hearing, and thereafter should make assessments, and have a hearing on that, and perhaps should make new assessments and have a hearing thereon, and should thereafter call for bids on the bonds to be issued and for the contract to be let, and then should find at last that the bonds cannot be sold, the council would be compelled to entirely abandon the project or go over the whole proceeding again from the beginning—which would to say the least be quite expensive and troublesome. We doubt that such was the intention of the legislature and hence we think that time for the creation of the revolving fund was not intended to be of the essence, and that it is not necessarily required that it should be created as counsel for the appellants contends.

Counsel for the town of Gillette contends that since Chapter 155, supra, became effective the fund may be created at any time up to the time when the last bonds fall due. If that contention is correct, then an ordinance

may still be passed creating the fund, and curing the defect or invalidity of the ordinance of May 18, 1953. But so far as appears that has not yet been done, and so far as we know the council of Gillette may not be willing to do so. Hence the broad contention of counsel for respondent cannot be said to be properly before the court unless and until such curative ordinance has been passed, and until all the relevant facts—including the fact as to whether or not the contractor agreed to accept the bonds with the understanding that the revolving fund should be created—are before the court.

The judgment of the trial court is accordingly reversed with direction to overrule the demurrrer, give the council of Gillette the opportunity to pass whatever ordinance the town council may wish to pass, or whatever action it may wish to take, have the issues in the case joined, and thereupon hear the cause, and enter such judgment as may be proper and not inconsistent with this opinion.

*Reversed.*

RINER, J. and HARNSBERGER, J. concur.