JOSEPH T. BANNER,

*Plaintiff and Appellant*

vs.

CITY OF LARAMIE, a Municipal Corporation of Albany County, Wyoming; C. O. HAMMOND; VERNON G. BENTLEY; H. H. CORDINER; JOSEPHINE FAY; FLOYD B. FOREMAN; J. H. KILLIAN and CARROLL S. MOHR,

*Defendants and Respondents.*

(No. 2696; November 8th, 1955; 289 Pac. (2d) 922)

430

432

For the plaintiff and appellant the cause was submitted on the brief and also oral argument of W. P. Farthing of Laramie, Wyoming.

For the defendants and respondents the cause was submitted on the brief and also oral argument of Alfred M. Pence of Laramie, Wyoming.

## OPINION

BLUME, Justice.

Following the adoption and publication of a resolution of intention and a public hearing thereon, the city counsel of the city of Laramie, Wyoming, in May 1953 adopted ordinance No. 51 creating Storm Sewer Local Assessment District No. 4 providing for the construction of a drainage system and for the assessment of the cost against the property benefited. The district is located in the southeastern part of the city and consists of about 1/64 of the total area of the city. It is estimated that the total cost of improvement will be $50,000. In order to finance the construction, the city decided to issue improvement bonds to be paid from the proceeds of assessments levied on and collected from the district. On July 7, 1953, the city counsel adopted ordinance No. 55 establishing a revolving local improvement fund in accordance with Chapter 155, Session Laws of Wyoming, 1953. The city then advertised the bonds for sale but failed to receive any bids. However, the city counsel passed a resolution declaring its intention to proceed according to the plan adopted without submitting the matter to a vote of the people. The plaintiff herein, a taxpayer and one who owns vehicles and purchases gasoline, then brought this action to enjoin the city from proceeding with the plan adopted, contending herein that the statute of 1953 permitting the establishment of a revolving fund is unconstitutional for various reasons hereafter set out and that the ordinance passed in connection therewith is absolutely invalid for reasons hereinafter mentioned. The plaintiff in his petition set forth the proceedings of the city council. The city filed a demurrer on the grounds that the petition failed to show a cause of action. The trial court sustained the demurrer and dismissed the action. An

appeal to this court was thereupon taken by the plaintiff.

Ordinance No. 55, creating the revolving fund mentioned above, provides by section 2 thereof as follows: "Section 2. That, beginning on the same day as the City's special assessment, negotiable, coupon Storm Sewer Improvement Bonds, of Laramie, Wyoming, Storm Sewer Local Assessment District No. 4 bear, while any of said bonds are outstanding, but in no event to exceed a period of ten years from the date of said bonds, or for the length of time necessary to pay all bonds so issued, whichever is shorter, there shall be placed in and credited to said fund annually from the proceeds of City or State gasoline or state cigarette license taxes collected or received by said City, a sum equal to four per centum (4%) of the original principal amount of said bonds by the expiration of one year from the date of said bonds, and an equal amount by the same month and day in each of the succeeding years; provided, however, in no event shall money be deposited in said fund whenever the monies therein shall exceed twenty per centum (20%) of the original principal amount of the outstanding bond obligations of said District."

Section 5 of the same ordinance provides that the city may withdraw from the revolving fund any money in an amount not in excess of the difference between the total amount in said fund and the amount of the aggregate principal and interest requirements to maturity of said bonds then outstanding.

The statute in question here, Chapter 155, page 190, Session Laws of Wyoming, 1953, is as follows:

"Revolving Local Improvement Fund

"Section 1. Whenever a city or town council determines that improvements constructed in any local improvement district, authorized by Chapter 29, Article 20, Wyoming Compiled Statutes, 1945, confer general benefits on a City or Town in which such district is created, the City or Town Council ordering and

establishing said district may create concurrently a fund to be known as the Revolving Local Improvement Fund. In payment for such benefits and to meet the financial requirements of said Revolving Fund, said cities and towns shall advance annually to the credit of said fund from the proceeds of City or State gasoline or state cigarette license taxes collected or received by said cities or towns, a sum not less than 2% of the total amount of the bonds issued for said local improvement district for a period of ten (10) years or for the length of time necessary to pay all bonds so issued, whichever is shorter, but in no event shall said fund exceed 20% of the outstanding bond obligations of said district.

"Transfer From Revolving Fund to Local Improvement Fund

"Section 2.   Each such city or town shall withdraw annually from said Revolving Fund and deposit in the Local Improvement District Fund sufficient money to meet the difference between the principal amount of assessments due that year and the amount of assessments actually collected that year. Delinquent assessments shall remain liens upon the property assessed, and when said liens are enforced or foreclosed as provided by Chapter 29, Article 20, Wyoming Compiled Statutes, 1945, the proceeds of the sales, or other payments discharging said delinquencies, shall forwith revert to the said Revolving Fund in repayment for amounts so advanced. Whenever there shall be money in such local improvement fund which is not required for the payment of any bond or interest of such local improvement fund, and after all of said bonds and interest have been fully paid, the money so remaining in the local improvement fund shall, by order of the council, be transferred to, and become a part of, the Revolving Fund for disposition in such manner as the City or Town Council may determine.

"Remedy of Local Improvement Bondholder

"Section 3.   That Section 29-2050, Wyoming Compiled Statutes, 1945, be and the same is hereby amended and re-enacted to read as follows:

"29-2050. Neither the holder nor owner of any bond issued under the authority of this Act shall have any claim therefor against the City or Town by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, or from the local improvement fund of such City or Town, but his remedy in case of non-payment, shall be confined to the enforcement of such assessments, or for payment out of the Local Improvement Fund. A copy of this section shall be plainly written, printed or engraved on each bond so issued.

"Approved February 24, 1953."

Before proceeding further, it may be well to remember that in order to make an improvement in a city, it is not necessary to create an improvement district. But if the funds of the city permit, the improvement may be made out of the general funds of the city. Thus it is stated in 63 C.J.S. 727, 728:

"Authority to make public improvements may provide or include the power to provide that the cost of such improvements may be paid from the general levy of taxes, or by means of special assessments made against the property specially benefited, or that a part of the cost shall be paid by the municipality and the remainder by the abutting owners. Hence, subject to special statutory provisions, and subject also to the ordinary legislative limitations as to expenditures and indebtedness, as discussed infra § 1846 et seq, a municipal corporation may make a public improvement and pay for it out of its general fund. A charter or statutory provision allowing special assessments or bond issues does not necessarily deprive the city of this power, but, in the absence of express direction, it leaves to the discretion of the municipal authorities the choice of modes for defraying expenses."

1. Power of City to Create a Revolving Fund.

We pointed out in Abel v. Town of City of Gillette, 72 Wyo. 366, 377, 265 P.2d 376, 379, that the legisla-

ture by creating a revolving fund to supplement special assessments "intended to repair to some extent the unsavory reputation which local improvement bonds had attained in this state, so we should construe the legislation liberally in that light." A like reason caused the legislatures of other states to create a revolving or guaranty fund in such cases a good many years ago. Thus Utah passed a law in that connection as early as 1917. Stanley v. Jeffries, 86 Mont. 114, 284 P. 134, 139, 70 A.L.R. 166, had under consideration a statute creating such a fund in 1921. The court said among other things: "It is readily discernible that, under the law as it existed at the time this act was passed, the value of district bonds and warrants was problematical, and their salability greatly impaired, and the public credit and public good necessitated some action to remedy the defects in the existing law." What was true in Montana was true in this State, so that unless it is clear that the legislative act is unconstitutional, it must, in the interest of all, be upheld. To leave special improvement bonds unsalable cannot be said to be in the public interest. There should be some way to make them salable, and we know of no better way than that devised by the various legislatures, including our own.

In Wicks v. Salt Lake City, 60 Utah 265, 208 P. 538, 540, the court said:

"The city had the undoubted right, if it chose so to do, to provide for the lighting of the street in question and cast the burden thereof on the taxpayers of the entire municipality. It was not under the necessity of creating a special improvement district at all. It was not incumbent upon the city to impose the burden exclusively upon the owners of the abutting property. How then can it be consistently contended that the city is without power, especially when authorized by the Legislature, to provide a special guaranty fund for the payment of the bonds in question, and interest, in

the remote contingency that the necessary funds cannot be obtained from assessments made upon the abutting property? The proposition seems to me to be incontrovertible that, if the city has the power to pay for lighting the street from taxes paid upon all the property in the city, it has the power to guarantee the payment of an obligation which at the most, is so contingent as to be barely possible."

In Marks v. City of Mandan, 70 N.D. 474, 296 N.W. 39, 45, it is said:

"The various arguments advanced as to the unconstitutionality of a statute requiring the levy of a general tax to meet deficiencies resulting from the failure of special assessment collections lose their virility when we consider that we are dealing with the question of legislative power under the constitution, in light of the unquestioned fact that the legislature might have provided for the payment of the type of improvement involved in this case by general taxation without notice or hearing as to individual benefits resulting from the improvement. The legislature might have authorized municipalities to incur a general primary indebtedness for the purpose of creating such an improvement. It therefore follows that the legislature may provide for these local improvements to be paid for, in whole or in part, by general taxes; or to be paid primarily by special assessments, with a provision to care for deficiencies by general taxation." See also cases thereafter mentioned.

2. Limitation of Indebtedness.

It is contended that the creation of the revolving fund is contrary to Article 16, Section 4 of the Wyoming constitution providing:

"No debt in excess of the taxes for the current year shall, in any manner, be created by any county or sub-division thereof, or any city, town, or village, or any sub-division thereof in the state of Wyoming, unless the proposition to create such debt shall have been submitted to a vote of the people thereof and by them approved."

It is also contended that Article 16, Section 5 of the constitution provides that no city shall create any indebtedness exceeding 2 percent on the assessed value of the taxable property therein as shown by the last preceding general assessment, and that the amount levied shall be 4 percent in the case of building sewerage. It may be noted that the revolving fund is a guaranty fund for the payment of bonds issued herein and is taken out of the cigarette tax and the gasoline tax which comes into the general fund of the city. Counsel think that to divert these taxes to guarantee the payment of the bonds intended to be issued herein is to create an indebtedness against the city in violation of the constitution; and they think we have so held in Laverents v. City of Cheyenne, 67 Wyo. 187, 217 P. 2d 877. That case decided that revenue bonds for sewerage payable out of the revenues derived from the sewerage system was not in violation of the constitution. It is true we mentioned therein that bonds of that nature should not create a general liability against the city and should not be able to make the city suffer a loss by reason of nonpayment of the revenue bonds payable out of the general fund. That statement was based on 38 Am. Jur. 150, but that statement was merely incidental to the real question in that case. The rule stated in 38 Am. Jur. 150 has its exceptions and modifications. Our attention was not called to these, nor did we consider them. Hence the incidental statement mentioned above has no controlling force or effect herein.

In order to determine the effect of the guaranty fund in this case, we must consider the provisions of the statutes. It may be noted that the bonds issued pursuant to the assessment is not a general obligation of the city. Section 3, Session Laws of Wyoming, 1953, p. 190, provides:

"Neither the holder nor owner of any bond issued under the authority of this Act shall have any claim therefor against the City or Town by which the same is issued, except from the special assessment made for the improvement for which such bond was issued, or from the local improvement fund of such City or Town, but his remedy in case of non-payment, shall be confined to the enforcement of such assessments, or for payment out of the Local Improvement Fund. A copy of this section shall be plainly written, printed or engraved on each bond so issued."

If any assessment becomes delinquent that remains a lien upon the property assessed which lien may be enforced according to law and shall immediately revert to the revolving fund in repayment for amounts advanced. In other words it is very clear that the liability of the city for any delinquency which may accrue in the assessment of the bonds is at most, if at all, purely and solely contingent.

The legislature in Utah provided for a guaranty fund to pay unpaid assessments by transferring enough money out of the general fund to the guaranty fund. In the case of Deseret Sav. Bank v. Francis, 62 Utah 85, 217 P. 1114, 1116, the court said: "Appellants' counsel suggest that the creation of the guarantee fund referred to might involve a violation of article 14, § § 3 and 4, of the Constitution, which limits the indebtedness of municipalities. A complete answer to that contention is that no such situation appears in this case."

So in the case at bar there is no evidence in the record to show that either of the constitutional provisions would be violated. The most that could be said is that there would be a possibility arising in the future of a violation of the foregoing constitutional provisions. That contingency was considered in the case of Wicks v. Salt Lake City, 60 Utah 265, 208 P.

538, 541, in which the court makes reference to provisions like the two constitutional provisions of our own constitution. The court in considering the question stated:

"If there is any reasonable doubt about it, the law will not be declared unconstitutional. This is elementary doctrine. Plaintiff does not contend that it manifestly appears that the act of 1921 attempts to authorize the creation of an indebtedness in excess of the limit fixed by the Constitution, but the contention seems to be that there is a vague and remote possibility that a literal compliance with the law may at some time in the future result in the creation of an indebtedness in excess of the constitutional limit. We seriously doubt if there is a sufficient showing on the part of plaintiff concerning this question to justify an extended discussion. Plaintiff no doubt has presented every argument that can be presented on that side of the question, but his argument is by no means convincing. To hold that a solemn act of the Legislature intended to support and maintain the credit of the municipalities of the state is unconstitutional on some vague theory that in its operation there is the barest possibility of a contingency arising in which there may be an infringement of the Constitution is going further than any case which has heretofore come under my observation."

It has been held in numerous cases that contingent liability does not constitute a debt within the constitutional provisions. Thus it is said in American Co. v. City of Lakeport, 220 Cal. 548, 32 P. 2d 622, 626:

"The rule that the inhibitions of the constitutional debt limit do not apply to contingent obligations has long been settled in this state. In Doland v. Clark, 143 Cal. 176, 76 P. 958, 960, where a city by certain contracts agree to pay for certain services for five years at a monthly rate, it was held that there was no violation of article 11, § 18, the court saying: 'It is evident that they (the contracts) did not create any liability at the time they were executed, except a contingent future liability. * * * The amounts to become due on com-

pletion of the contracts by appellant might never become a liability upon the city. A sum payable upon a contingency is not a debt, nor does it become a debt until the contingency happens'."

In Hansen v. City of Havre, 112 Mont. 207, 114 P. 2d 1053, 1056, 1057, 135 A.L.R. 1278, the court stated: "It should be pointed out that the proposed bonds are not obligations of the city, but of the special improvement district only, and payable only from the district fund. The revolving fund arrangement is merely a means whereby the district may borrow money to make up any deficiency. The revolving fund arrangement is similar in purpose to a plan in the State of Washington which came before the Supreme Court of that state in Comfort v. City of Tacoma, 142 Wash. 249, 252 P. 929, 931. In that case the contention was made that a similar arrangement amounted to the incurring of a city debt. The court approved the holding in the case of Corey v. City of Ft. Dodge, 133 Iowa 666, 111 N.W. 6, as follows: 'Where the city had provided for a special assessment for improvements which contemplate a probable deficiency, the amount thereof could not be considered as being an indebtedness within the meaning of the constitutional limitation'."

In the case of Comfort v. City of Tacoma, 142 Wash. 249, 252 P. 929, 931, the court stated:

"The question then naturally arises, has the city unconditionally bound itself to pay all these unpaid bonds to the extent of at least 5 per cent. of the total amount outstanding? It is apparent, of course, that the city has made no such promise. Its promise is to pay into the guaranty fund sufficient to make it equal to 5 per cent. of the outstanding bonds, provided the local assessment funds prove insufficient. To state the matter more simply, the city agrees that, if the property holders whose property has been assessed for the improvement fail to pay in the regular assessments to cover the bonds when due, then the city will make payment for them to a certain extent by accepting the bonds from the holders and levying a tax for the money to pay the same. This will readily be seen to be

only a contingent liability as far as the city is concerned, and in no sense a debt proper."

The case was approved and followed in Kelly v. City of Sunnyside, 168 Wash. 95, 11 P. 2d 230. To the same effect is Marks v. City of Mandan, 70 N.D. 474, 296 N.W. 39, which discusses the point at some length and cites a number of cases. See also Montgomery v. City and County of Denver, 102 Colo. 427, 80 P. 2d 434.

In most of the foregoing cases it appears the reserve or guaranty fund was created out of a special tax or out of the general revenue of the city. In the case at bar it is provided for by a portion of the cigarette and gasoline taxes. If such fund may be created by taking money from the general fund, it surely may be created out of an excise tax.

It may be noted that under Article 16, Section 5 of the constitution of Wyoming, the limitation there prescribed is according to the last preceding general assessment. In State v. Connelly, 39 N.M. 312, 46 P. 2d 1097, 100 A.L.R. 878, the court said that a debt contemplated by the constitutional limitation was one for the payment of which the general faith and credit of the state or municipality was pledged, and to retire which the levy of a general property tax rather than an excise tax was contemplated, in view of the constitutional provisions limiting the indebtedness to a percentage of the assessed valuation of all property as shown by the last preceding general assessment. This holding was approved in the case of Stone v. City of Hobbs, 54 N.M. 237, 220 P. 2d 704, in which case the revolving fund was created out of gasoline taxes collected by the city. The statute providing for this was upheld as valid. The case cites Calerdine v. Freiberg, 129 Ohio St. 453, 195 N.W. 854, 858.

In Annotation, 100 A.L.R. 900, 901, it is stated:

"Although the cases are not entirely in accord and dissenting opinions have been frequent, it has generally been held that an obligation payable exclusively from a special fund created by the imposition of fees, penalties, or excise taxes, and for the payment of which the general credit of the state or municipality is not pledged and resort may not be had to property taxation, is not a debt within the meaning of constitutional debt limitations."

The annotation cites a number of cases. It follows accordingly that the objections here considered must be overruled.

3. Due Process—Loans to Individuals, etc.

It is further contended that the statute in question is in violation of Article 16, Section 6, of the constitution of Wyoming reading:

"Neither the state nor any county, city, * * * shall loan or give its credit to make donations to or in aid of any individual, association or corporation, except for necessary support of the poor, nor subscribe to or become the owner of the capital stock of any association or corporation."

It is also contended that the statute is in violation of Article 1, Sections 6, 32, 33 of the constitution. We need to mention only Section 6 which provides: "No person shall be deprived of life, liberty or property without due process of law." Whether the statute in question is in violation of these constitutional provisions depends upon whether or not the revolving or guaranty fund is for a public purpose. Stanley v. Jeffries, 86 Mont. 114, 284 P. 134, 139, 70 A.L.R. 166. That this fund is for a public purpose cannot be denied. Thus it is stated in Comfort v. City of Tacoma, 142 Wash. 249, 252 P. 929, 930:

"It is next urged that to tax appellants' property, which receives no special benefit, to guarantee a payment of bonds issued against other property, is con-

trary to law, because the whole theory of local assessments is one of special benefits to the property assessed. But this is not a special assessment. The city has the right to initiate local improvements and to pay the whole cost thereof out of general taxes. This tax is imposed on all alike, and is general in its application. A benefit accrues to every property owner because the additional guaranty of the bonds is reflected naturally in the increased price at which the bonds sell, thereby reducing the cost of all improvements. In time every property owner will come within some improvement district either for original improvements or for new improvements to take the place of those worn out or obsolete, and thus receive a benefit at that time by reason of the increased value of the bonds." And in Stanley v. Jeffries, 86 Mont. 114, 284 P. 134, 139, 70 A.L.R. 166, it is stated:

"That the purchasers of bonds or warrants shall in the future, have greater security for the payment thereof than they have had in the past, is but incidental to the public purpose of the act before us, and does not militate against its validity."

Plaintiff is not deprived of any property but on the contrary he has been given some property by reason of the fact that he is relieved of a burden which might have been imposed upon him and the public at large, but which instead is imposed upon certain property which is specially assessed. That point has been fully discussed and decided adversely to plaintiff in the case of American Co. v. City of Lakeport, 220 Cal. 548, 32 P. 2d 622; Wicks v. Salt Lake City, 60 Utah 265, 208 P. 538.

Nor is the revolving fund a loan to any individual, association, etc. It is but incidental to the accomplishment of a public purpose. That question has been fully discussed in the case of Stanley v. Jeffries, supra, and Imboden v. City of Bristol, 132 Tenn. 562, 179 S. W. 147.

Let us make the matter plainer. Instead of saying that a loan is made to those whose property is assessed, the situation may be stated thus: These people whose property has been specially assessed met with the misfortune to be singled out to pay, nilly-willy, the cost of the improvement, whereas the public, including the plaintiff, should have borne or at least might have been compelled to bear the burden. Instead of that the public is charged with merely the contingent liability to carry out a public purpose. Instead of being a loan in the ordinary sense, it is merely a small contribution to a liability which is shifted from the public onto the shoulders of particular persons.

The question before us is annotated in 70 A.L.R. 176 and 135 A.L.R. 1287. The annotations consider a guaranty fund in connection with improvement districts. In 135 A.L.R. 1287, it is stated:

"Generally, statutes of the type under discussion have been held valid as not violating the Federal Constitution or various provisions of state Constitutions, such as provisions prohibiting the taking of property without due process of law, the gift or loan of public moneys, and the incurring of indebtedness beyond a specified amount."

Many cases are cited.

4. Constitutional Amendment of 1954.

Plaintiff also contends that the statute in question is in violation of the constitutional amendment adopted in 1954 by the vote of the people. The amendment, Session Laws of Wyoming, 1953, p. 281, reads as follows:

"No moneys derived from fees, excises, or license taxes levied by the State and exclusive of registration fees and licenses or excise taxes imposed by a county or municipality, relating to registration, operation or use of vehicles on public highways, streets or alleys, or to

fuels used for propelling such vehicles, shall be expended for other than cost of administering such laws, statutory refunds and adjustments allowed therein, payment of highway obligations, cost for construction, reconstruction, maintenance and repair of public highways, county roads, bridges, and streets, alleys and bridges in cities and towns, and expense of enforcing state traffic laws."

It is contended that gasoline taxes cannot, in view of this constitutional amendment, be used to construct storm sewers in cities. Counsel try to make a distinction between drains on a street and storm sewers. There is of course a difference. In some cases drains on two sides of the street may be sufficient. In this instance the city council of the city of Laramie adopted an ordinance for storm sewers. With that discretion we cannot interfere. A storm sewer is an incidental part of improving streets. The ordinance in this case describes certain streets along which the storm sewer shall be laid. It passes through one private property but that is merely incidental to the work as a whole. It is clear that the revolving fund is not in violation of the constitutional provision just mentioned.

### 5. Miscellaneous Provisions.

It is also contended that Section 3 of the statute in question is ambiguous and inconsistent; furthermore that under the statute the taxing power of the city is surrendered and that an obligation is extinguished. We see no merit in these contentions and they are overruled.

### 6. The 20 Percent Limitation.

Section 2 of ordinance No. 55, creating the revolving fund, provides at the end thereof that in no event shall the revolving fund exceed 20 percent of the original amount of the outstanding bond obligations. Counsel for appellant contends that the word "original" should

be stricken, claiming that the statute provides that the revolving fund should not amount to more than 20 percent of the outstanding bond obligation *then* existing, and that under the ordinance it might happen that the revolving fund would amount to more than that. We have read the briefs of both sides over and over again, but they have left us in confusion. A few actual illustrations might have helped to understand their contentions. Technically speaking appellant's contention seems to be correct. For instance it may happen that the assessments during the first year would all be paid and one-tenth, or $5,000 of the bonds be paid, and there would then be $2,000 in the revolving fund (4% of $50,000). In the second year, if all the assessments are paid and $5,000 of the bonds are retired, that would leave $40,000 of the bonds, and there would then be $4,000 in the revolving fund. If all the assessments are paid the third year, and if another $5,000 is retired, that would leave $35,000 unpaid bonds, and there would be in the revolving fund the sum of $6,000, somewhat less than 20 percent of the bonds then outstanding. If all the assessments are paid the fourth year, that is to say if another $5,000 is retired, that would leave $30,000 of the bonds unpaid, and there would then be $8,000 in the revolving fund, or $2,000 more than the 20 percent of the bonds then outstanding. The excess of 20 percent would under like conditions be increased in the following years. Under the theory of the appellants, not only should there never be more than $8,000 in the revolving fund, but that amount should be decreased after the fourth year, if the assessments should all be paid and $5,000 of the bonds should be retired each year. The point appears to be of some importance and has given us considerable trouble. The statute does not seem to contemplate any withdrawals of amounts once paid into the revolving fund until all

the bonds are paid. The last years of the assessment period may be the vital years, when assessments would not be paid, so that no bonds, or only a portion might be paid out of the assessments. There can be no doubt that the statute contemplates that at least 2 percent *or more* of the original amount of the bonds *may be* paid into the revolving fund for the period of ten years, or a total of 20 percent of the *original amount* of the bonds issued. If, when the revolving fund reaches an excess of 20 percent of the then outstanding bonds, the excess must be withdrawn from the fund, then it might well happen that thereafter the amount of the unpaid assessments would be so great as to leave the unpaid bonds wholly unprotected, so that the city would then be compelled to replenish the revolving fund by an amount greater than deemed desirable by it so as to fully protect the bonds outstanding. In fact Section 5 of the ordinance permits the withdrawal of amounts from the revolving fund. To compel frequent withdrawals from and replenishing of the revolving fund is not too desirable. The city should have some discretion, even though the revolving fund at times exceeds the amount then necessary for the bonds then outstanding. There can scarcely be any doubt that the statute contemplates that the revolving fund of 20 percent shall be a protection for all the bonds—principal and interest—as originally issued, and not for only a part of them. As already indicated, experience teaches that the protection is especially necessary for the bonds maturing toward, or at the end of the ten year period and the statute must be construed in view of that fact. Hence if the city, in its discretion, deems it advisable to keep in the revolving fund 20 percent of the original amount of bonds issued, as provided by Section 2 of the ordinance, with the privilege of withdrawal as mentioned in Section 5 of the ordinance, its discretion has not been abused, and that procedure,

which is probably the wisest that could be pursued, should not be held, and we hold that it is not, in violation of the spirit of the statute in question.

7. Disjunctive Provisions.

The statute here in question provides that the revolving fund should be created out of city *or* State gasoline *or* State cigarette license taxes. The ordinance follows the wording of the statute. It is in the disjunctive, and it is contended that the ordinance should have designated specifically out of which one of the three license taxes the city intended to create the revolving fund, and that without such specific designation the ordinance is unenforceable. The important point of the statute and the ordinance is the creation of the revolving fund, not the specific tax out of the three mentioned. We agree with counsel for the city that the fund may be created out of any one of the three taxes mentioned or out of all of them as the city in its discretion may deem advisable.

Other objections are raised to the ordinance mentioned above. They are not of sufficient importance to deserve discussion, and the objections are overruled.

The judgment of the district court is affirmed.

*Affirmed.*

RINER, C. J., AND HARNSBERGER, J. concur.